CHOCTAW, OKLAHOMA AND GULF RAILROAD COMPANY v. CHARLES ZWIRTZ.

(Filed September 9, 1903.)

1. **BAGGAGE.** Under the laws of this territory baggage which a common carrier of persons must receive and carry without charge, except for an excess of weight over one hundred pounds, means only such articles as are intended for the use of the passenger while traveling, or for his personal equipment, and does not include merchandise, or articles intended for business purposes.

2. **PLEADING AS TO DAMAGES.** Every fact necessary to be proven to entitle the plaintiff to recover must be averred in his pleadings.

(Syllabus by the Court.)

*Error from the District Court of Caddo County; before Frank E. Gillette, Trial Judge.*

*R. E. Campbell,* for plaintiff in error.

*Robinson & Jackson,* for defendant in error.

### STATEMENT OF FACTS.

This case was originally brought in the probate court of Caddo county by Charles Zwirtz, as plaintiff, against the Choctaw, Oklahoma and Gulf Railroad Company, defendant. The petition contained three counts. The first count alleges that on August 5th, 1901, the plaintiff purchased from the defendant's agent at Oklahoma City, in Oklahoma Territory, two tickets from said Oklahoma City to Anadarko, in said territory, and that said defendant through its agent accepted and undertook to transport as baggage from Oklahoma City to Anadarko a certain trunk, belonging to the plaintiff, and checked said trunk as baggage, said check being numbered 48286; that said trunk and contents were of the value of $207.50, for which amount the plaintiff prays judgment against the defendant, alleging that said trunk and contents were lost through the negligence of the defendant. The second count alleges that said trunk contained the following articles necessary to the carrying on of said plaintiff's business as a butcher: One counter scale, three cleavers, one steel, two steak knives, two skinning knives, two meat saws; that upon the loss of said tools plaintiff made diligent efforts to obtain tools to carry on his business, but was unable to do so, and that he was delayed in the loss of said tools, in starting and carrying on his business, whereby he was damaged in the sum of $300.00, for which amount he prays judgment against defendant.

The third count alleges that in addition to the articles mentioned in the first count, said trunk contained many

articles of special value to the plaintiff, in the aggregate $300.00, for which amount he prays judgment against the defendant. The answer of the defendant was a general denial. At the trial of the case in the probate court the defendant tendered to the plaintiff the trunk and contents, which, upon examination were found by the plaintiff to be intact, and accepted the same and dismissed the first and third counts of his petition. The case went to trial upon the second count, resulting in a judgment for the plaintiff against the defendant, amounting to $160.00 and costs. The defendant appealed to the district court, where the case was tried, resulting in a judgment in favor of the plaintiff for $125.00 and costs. A motion for a new trial was duly filed by the defendant, which was overruled, and the cause brought here by the defendant for review.

Opinion of the court by

IRWIN, J.: The first assignment of error is that the court erred in overruling the defendant's objection to the introduction of evidence on the grounds that the petition fails to state a cause of action. In this count plaintiff seeks only to recover damages for the delay in delivering the butcher's tools to him at Anadarko, resulting, so he alleges, in delaying him in starting and carrying on his business.

This contention turns upon whether or not the articles contained in said trunk were or were not properly baggage. This is a subject which we think is a proper subject for legislative limitation, and one which the legislature of this territory have regulated by statute.

Wilson's Revised and Annotated Statute of Oklahoma, 1903, section 708, contains this provision:

"A common carrier of persons, unless his vehicle is fitted for the reception of passengers exclusively, must receive and carry a reasonable amount of luggage for each passenger without any charge except for an excess of weight over one hundred pounds to a passenger."

Section 709: "Luggage may consist of any articles intended for the use of a passenger while traveling, or for his personal equipment."

We take it that the term luggage is synonomous with baggage, the latter being in common use in this country, while the former seems to be almost exclusively used in England. They signify one and the same thing.

The petition merely alleges that the plaintiff purchased the tickets, and upon them had the trunk checked as baggage. It is not alleged that defendant's agent knew the contents of the trunk, or the purpose of plaintiff's journey, and accepted the same with such knowledge; therefore, unless the tools mentioned in plaintiff's petition come within the term luggage as defined by the statute, he has not stated a cause of action. The legislature having defined luggage as baggage, the statute quoted limits the articles which common carriers may be required to carry to those which fall within the definition, and if at common law other articles might have been included, then this statute limits the common law, and governs the subject in this territory. It seems to us that the statute in determining of what items luggage may consist, uses the term may in the sense of must or shall, because to say: "Luggage may consist of any articles intended for the use of a passenger while traveling, or for his personal equipment," would infer that any other article would not come within the definition of baggage. To come within the statute the tools for which rental value is sought to be re-

covered in this case, must either have been intended for the use of the plaintiff while traveling, or for his personal equipment.

That they were not intended for his use while traveling is clear from the very nature of the articles themselves, and from the allegations of the petition, for the petition says they were articles necessary to carry on the plaintiff's business as a butcher. This language does not bring them within the definition of section 709 of the statute, which is, articles intended for the use of the plaintiff while traveling, or for the plaintiff's personal equipment, but articles necessary for plaintiff's business as a butcher. Now were they intended for his personal equipment? That is, the equipment of his person? The Century dictionary defines equipment as the act of equipping or fitting, or the state of being equipped, as for a voyage or an expedition. It will be seen by the same authority that the term equip is derived from words of similar meaning, and often similar sound in various other languages, all meaning or relating to a ship, voyage or expedition. Now the equipment here referred to is personal. The adjective personal is defined by Webster as pertaining to the external or bodily appearance. It is defined in the Century dictionary as things of or pertaining to the person. It seems to us that a reasonable interpretation of the term "personal equipment" is that it only includes clothing, jewelry, and such things as are used in the protection or adornment of the person; it does not include the tools with which one may gain a livelihood after the journey is completed. It is true that some cases there are which hold that tools may be carried as baggage, but such cases are always within jurisdictions where no statute similar to ours is in force, and it will also

be seen upon examination of those cases that the tools there mentioned were shown to have been such as are usually carried by journeymen workmen in traveling, which is not one of the allegations in the petition in reference to the tools here involved.

In the case of *Oakes v. Northern Pac. Ry. Co.,* decided by the supreme court of Oregon in 1891, which was a case where the Oakes Comedy Company, an organization giving theatrical entertainments in the villages and cities on the line of the defendant's road, checked seven trunks on five first class tickets from Hope, in the state of Idaho, to Thompsons Falls, Montana, and that said trunks were delivered to the said railroad company, and contained clothing, stage properties, costumes, musical instruments and theatrical property of the said comedy company. It was further alleged in the petition in this case that through the negligence of the said company said train was wrecked, and a large part of said property was destroyed by fire, etc. Justice Lord, in deciding that case, uses this language:

"In determining the question presented by this record it is necessary to understand the nature and extent of the obligation which a common carrier of passengers by rail assumes as respects the personal baggage of the passenger. That obligation requires it not only to carry the passenger, but also to carry a reasonable amount of his personal baggage. The carriage of the baggage of the passenger, said Andrews, judge, under reasonable limitations as to amount, is the ordinary incident to the carriage of the passengers; and the duty arises on the part of the company to carry the baggage of the passenger as incident to the principal contract, without any specific agreement or separate compensation. (*Isaacson v. Railroad Co.,* 94 N. Y. 278.) As respects such baggage a carrier of passengers is held to the same lia-

bility as a common carrier of goods. For its loss or destruction save by the act of God or the public enemy, it must respond, though without fault on its part. To this extent it is an insurer and is responsible for the carriage and safe delivery of such baggage the same as goods entrusted to it as freight. But it is only to such articles as may be legally termed baggage that such liability attaches, no matter what may be the contents of the bag or trunk. As to what constitutes baggage in the legal sense, or ordinary baggage or personal baggage as commonly used in England, it has been found by the courts difficult, if not impossible, to define with accuracy within the meaning of the rule of the carrier's liability. It is agreed on all hands, said Erle, Chief Justice, that it is impossible to draw any very well defined line as to what is and what is not necessary or ordinary baggage for a traveler. That which one traveler would consider indispensable would be deemed superfluous and unnecessary by another. But the general habits and wants of mankind must be taken to be in the mind of the carrier when he receives a passenger for conveyance. (19 C. B. 321.) In a general sense it may be said to include such articles as it is usual for persons traveling to take with them, for their pleasure, convenience and comfort, according to the habits and wants of the class to which they belong. In *Weeks v. R. R. Co.,* 9 Hun. 669, it is said that a passenger may carry with him such articles of necessity and convenience as are usually carried by passengers for their personal use and comfort, instruction and convenience or protection. In *Jordan v. R. R. Co.,* 5 Cush. 69, the rule is stated to be that baggage includes such articles as are of necessity or convenience for personal use, and such as is usual for persons traveling to take with them. In *Johnson v. Stone,* 11 Humph. 419, the court said: 'It is not practical to state with precise accuracy what shall be included by the term baggage. It certainly includes articles of necessity and personal convenience usually carried by passengers for their personal use, and what these may be will very much

27—Vol 13

depend upon the habits, tastes and resources of the passenger.' In *Railroad Company v. Smith,* 12 Wall. 262, Justice Field said: 'That the contract to carry the person only implies an obligation to transport such a limited quantity of articles are as ordinarily taken by travelers for personal use and convenience, such quantity depending, of course, upon the station of the party, the object and length of his journey.' In *Macrow v. R. R. Co.,* L. R. 6, Q. B. 612, Cockburn, Chief Justice, said: 'Whatever the passenger takes with him for his personal use and convenience, according to the habits or wants of the particular class to which he belongs, either with reference to the immediate necessities or to the ultimate purpose of the journey, must be considered as personal luggage. This would include not only articles of apparel, whether for use or ornament, but also the gun case or fishing apparatus, of the sportsman, the easel of the artist on a sketching tour, or the books of the student, and other articles of analagous character, the use of which is personal to the traveler, and the taking of which has arisen from the fact of his journeying. On the other hand, the term ordinary luggage, being thus confined to that which is personal to the passenger, and carried for his use and convenience, it follows that what is carried for the purpose of business, such as merchandise and the like, or for larger and ulterior purposes, such as articles of furniture or household goods, would not come within the description of ordinary luggage, unless accepted as such by the carrier. So that it would seem that baggage in the sense of the law may consist of such articles of apparel as, through necessity, convenience, comfort or recreation, the passenger may take for his personal use, according to the habits or wants of the particular class to which he belongs, either with reference to the immediate necessities, or ultimate purpose of the journey. The question what articles of property, as to quantity and value contained in a trunk may be deemed baggage within the rule is to be determined by the jury, according to the circumstances

of the case, subject to the power of the court to correct any abuse. As the contract of a carrier of passengers is to carry a reasonable amount of baggage for the accommodation of the passenger, it follows from the nature and object of the contract, as observed by Appleton, C. J., that the right of the passenger is limited to the baggage required for his pleasure, convenience and necessity during the journey. (*Wilson v. R. R. Co.*, 56 Me. 62.) Articles of whatever kind that do not properly come within the description of ordinary baggage are not included within the terms of such contract, nor is the carrier liable for their loss, or destruction in the absence of negligence. Stage properties, costumes, paraphernalia, advertising matter, etc., are not articles required for the pleasure or convenience or the necessity of the passenger during his journey, but are plainly intended for the larger or ulterior purposes of carrying on the theatrical business. They do not fall therefore under the denomination of baggage, and in the absence of negligence no liability can arise against the carrier for their loss or destruction, unless accepted as baggage by the carrier.' In the case of *K. C., P. & G. R. Co. v. State of Ark.*, 41 L. R. A. 334, the court holds that the fact that a portion of the contents of the trunk were proper articles of baggage does not affect the tools in controversy. 'Merchandise is often carried as baggage, but the carrier is not always liable for it as such. The general rule is that the carrier is not liable for merchandise shipped as baggage in the absence of conversion or gross negligence, unless it had notice that such merchandise was being so shipped and accepted it as such. Where the trunk of a passenger contains both personal baggage and also merchandise, but the carrier has no notice that the merchandise is in the passenger's trunk, it will be liable only for the loss of the personal baggage, and not for the merchandise.' Where the passenger delivers to the carrier, without comment what appears to be personal baggage, the carrier is not put upon inquiry as to the nature

of the property, but may assume that it consists only of personal baggage, and is not answerable for articles not coming within the description. (Ray on Neg. of Imposed Duties, 561.)"

Now it seems to us the question in this case is: Do the butcher's tools described in the petition come within what the legislature in section 709 has termed luggage? Were they such articles as are intended for the use of a passenger while traveling, or for his personal equipment? If they do not fall within either one of these rules, then they are not such as the laws of this territory require railroad companies to carry as baggage. It seems to us that the answer in this case must be in the negative; that without discussing what might have been the effect of the delivering of such articles to a railroad company under the rules and regulations at common law, but under the rules and regulations of our statute, they are not baggage, and the railroad company is not required to carry them as such. If this contention is correct, then the objection of the defendant to the introduction of evidence on this count of the petition should have been sustained, and the failure to do so was error on the part of the court.

The second assignment of error is that the court erred in permitting the plaintiff to prove the rental value, the value of the use of the tools, over the objection of the defendant. It will be observed that the only allegation of damages in the second count of the plaintiff's petition, which is the only count on which the case was tried, is as follows:

"That by the negligence of the company he was delayed in starting and carrying on his business, whereby he was damaged three hundred dollars, for which he demands judgment against the defendant."

While the strict rules of the common law with reference to pleadings have been very much modified by our code, still it can hardly be said that even under our code a litigant can prove and recover a judgment for damages not claimed in his petition. The general rule, and one that has been followed in this territory, is that every fact necessary to be proven to entitle the plaintiff to recover, must be averred in his petition. (*Church v. A., T. & S. F. R. R. Co.,* 1 Okla. 44.)

In this case we have carefully read over the second count in the petition, that being the count on which this action is based, and we fail to find that any claim is made for damages for the rental value of the use of the tools during the time the shipment was delayed. The record discloses that the court refused to permit plaintiff to prove loss to his business, but did permit him, over the defendant's objection, to prove the value of the use of the tools, the rental value during the delay. The only allegation of damages is the allegation of damage by loss to business, and we are unable to see how, even under the liberal provisions of our code, the plaintiff could be permitted to prove the rental value of these tools without amending his petition in this particular. This we think was error on the part of the district court.

The third assignment of error is that the court erred in overruling the demurrer to the plaintiff's evidence filed by the defendant at the close of plaintiff's evidence in the court below. If our view of the first assignment of error is correct, then it necessarily follows that this assignment of error is well taken.

The fourth assignment of error is that the measure of damages stated by the court in his instruction number 2 is

not the proper measure of damage.   The instruction referred
to is as follows:

"You are instructed, gentlemen of the jury, that if you
find from the evidence in this case and the instructions of
the court here given that the plaintiff is entitled to recover in
this action, the measure of damage upon which he is entitled
to recover is the usual rental or usage value of said tools for
the length of time that he has, by fault or neglect of the
defendant company, been deprived of the use thereof.   While
it is agreed between the plaintiff and defendant that said
goods were shipped on the 5th day of August, 1901, and were
delivered to the plaintiff on the 14th day of October, 1901,
the lapse of time between said dates is not the length of time
for which the plaintiff would be entitled to recover damages.
The defendant, after the receipt of the goods, is entitled to
a reasonable time within which to deliver the same at Ana-
darko, and you must determine from the evidence what would
be a reasonable time, under the facts and circumstances of
this case, giving to the defendant credit for that time within
which to deliver the same."

By this instruction the court tells the jury that the
plaintiff is entitled to recover the usual rental value or usage
value of said tools for the length of time he has by neglect
or fault of the defendant company been deprived of the use
thereof.   We think this is erroneous, for the reasons assigned
for sustaining plaintiff's second assignment of error.

We might add that in this case there is nothing either
in the pleadings or in the evidence to show that the defend-
ant or its baggage agent knew that the plaintiff was a butcher,
or what the purpose of his journey was, or that his trunk
contained butcher's tools.   This being true, the damages
claimed for rental value could not possibly have been within
the contemplation of the defendant at the time of the making

of the contract, and the only damages which could have possibly been contemplated were those imposed by Wilson's Revised Statutes of Oklahoma, sec. 2746, which reads as follows:

"The detriment caused by a carrier's delay in the delivery of freight is deemed to be the depreciation in the intrinsic value of the freight during the delay, and also the depreciation, if any, in the market value thereof, otherwise than by reason of a depreciation in its intrinsic value, at the place where it ought to have been delivered, and between the day at which it ought to have been delivered and the day of its actual delivery."

This being the statutory provision as to the damage, it seems to us fair to presume that in the absence of any knowledge of any particular use to which the baggage checked was to be put, or any particular special value it might have, that the only damage contemplated by the defendant railway company in case of delay or destruction, would be the damage defined by statute.

The fifth assignment of error is that the court erred in giving instruction number four.

Instruction No. 4 is as follows:

"You are instructed, gentlemen of the jury, that if the defendant company, being a common carrier of persons and baggage, offered to sell and did sell to plaintiff tickets for the transportation of himself and baggage to an amount of baggage within the limit for which baggage was received for transportation to a point beyond its line of road, and his, plaintiff's, tickets so sold to him, purported to carry him over connecting lines of road, and defendant company took and received full compensation for the transportation of the plaintiff and his said baggage, without contract and agreement other than that he and his baggage should be so trans-

ported, then I instruct you that connecting lines of road under such agreement would be the agents of defendant for the complete fulfillment of the contract, and the defendant would be liable for unnecessary neglect or delay which might occur upon such connecting lines of road."

Wilson's Annotated Statutes, sec. 724, reads as follows:

"If a common carrier accepts freight for a place beyond his usual route, he must, unless he stipulates otherwise, deliver it at the end of his route in that direction to some other competent carrier, carrying to the place of address, or connected with those who thus carry, and his liability ceases upon making such delivery."

It would seem that this instruction and this section of the statute are in irreconcilable conflict. This being true, while this instruction might be good at common law, it must be held as a bad instruction under the terms of this particular statute. There is nothing in this record that indicates any stipulation on the part of the defendant to assume any liability greater than that imposed by statute. In fact, the ticket which is introduced in evidence, and appears on record, page 43, contains a limit on the liability on the part of the company to its own lines.

There are some other assignments in error, but as we think the case must be reversed for the reasons already expressed in this opinion, we do not deem it necessary to discuss them at this time.

The judgment of the lower court is hereby reversed, at the costs of the defendant in error, and the cause remanded to the district court for such action as may be consistent with the views herein expressed.

Gillette, J., who presided in the court below, not sitting; Burford, C. J., absent; all the other Justices concurring.