## MARYLAND CASUALTY CO. v. DAVIS TRUST CO. et al.

(District Court, N. D. West Virginia, at Elkins. November 13, 1923.)

**Highways** ⊂⇒113(4)—**On annulment of contract for construction, state commission held entitled to use of contractor's equipment as against mortgagee.**

Acts W. Va. 1921, c. 112, § 25, provides that the State Road Commission, before construction of a road, shall file with the clerk of the county court of the county a copy of the specifications and notice of its intended construction. Specifications so filed provided that on default by the contractor the commission might take over and complete the work, and might use materials and equipment on the ground. *Held* that, where the commission took over the work on default of the contractor and turned it over to his surety for completion, the surety was entitled to the use of any materials and equipment on the ground and in use by the contractor, as against a mortgagee thereof, whose mortgage was taken after filing of the specifications.

In Equity. Suit by the Maryland Casualty Company against the Davis Trust Company and others. On motion for preliminary injunction. Granted.

G. F. Cushwa, of Baltimore, Md., and Arnold & O'Connor, of Elkins, W. Va., for plaintiff.

Talbott & Hoover, of Elkins, W. Va., for defendant Davis Trust Co.

McCLINTIC, District Judge. The bill in this case was filed on the 13th day of November, 1923, in the District Court for the Northern

District of West Virginia, at Elkins. Jurisdiction was given to this court by reason of the diversity of citizenship of the parties.

The defendants W. J. Gephart and J. T. Gephart, Jr., tradng under the firm name or style of W. J. & J. T. Gephart, entered into a contract with the state of West Virginia, acting through a state corporation called the State Road' Commission, to construct a certain piece of road known as the Elkins-Belington road, Project No. 3032, and approximately 45,408 feet in length, according to the terms of a certain contract fully and completely set out in the bill. The aggregate unit price for such work was $274,000.60, exclusive of extras, damages, etc. The contract made the standard specifications of the West Virginia State Road Commission a part thereof. These specifications included therein section 59, as copied in the bill.

This section 59 related to the annulment of the contract, in the event that the contractor failed to do the things therein set out. The manner of such annulment is fully set out in the contract, and the manner in which said road commission can take over the work is likewise set out therein. It would seem that such requirements were fully and completely complied with, and that the State Road Commission did take over, or take away from the contractors, the further completion of the work, upon the failure of such contractors to comply with various provisions of the contract. The clause in section 59 of the specifications, which is specially apropos here, is:

· "To procure or use any or all materials and equipment on the ground as may be suitable and acceptable, and may enter into an agreement for the completion of said contract, according to the terms and provisions thereof, and use such other methods as in their opinion shall be required for the completion of said contract, in an acceptable manner."

The road commission turned over to the Maryland Casualty Company, plaintiff (surety on the bond of the contractors), all such material and equipment as was on the ground and being used in the construction of said road, and the plaintiff was proceeding with the construction and finishing thereof, when the difficulty herein referred to arose. Section 25 of chapter 112 of the Acts of the Legislature of 1921 provides, among other things, as follows:

"When the commission· is about to construct, reconstruct or improve any road or highway, it shall file with the clerk of the county court, or of the municipality, as the case may be, in which such road lies, a certified copy of plans and specifications therefor, and a notice that said commission is about to enter upon and proceed with the work in question. If the said work is to be done, or the materials therefor are to be furnished by contract, the commission shall thereupon advertise for at least four weeks in two newspapers, of opposite politics, if there be such, but if not then in one newspaper, published in each county or municipality in which the road lies, and for one week in at least one daily newspaper published in the city of Charleston, and in such other journals or magazines as may to the commission seem advisable, for sealed proposals for the construction or other improvement of said road, and for the furnishing of materials required therefor, accurately describing the same, and stating the time and place for opening said proposals."

From the allegations and proof in this case, it seems that such plans and specifications and such notices were duly filed in the office of the

clerk of the county court of Randolph county, being the county where-in said road was to be constructed, and such specifications contained said section 59; and it further appears that the advertisements were had, as required by law, and that on the said 8th day of February, 1922, such contract was awarded to the defendants Gephart, and that they proceeded with the construction of said road and provided material and equipment therefor.   It further appears in this case that by a contract entered into on the 29th day of July, 1922, and recorded in the office of the clerk of the county court of said Randolph county on the 31st day of July, 1922, the defendants Gephart conveyed to the defendant Davis Trust Company a certain lot of equipment, including an Erie shovel and various other things set out in such contract.

It further appears, by another contract entered into between the same parties, dated on the 7th day of September, 1922, the Gepharts conveyed to the trust company certain equipment used on this road in the county of Randolph.   It should be stated that there were cer-tain other properties in other counties in the state, also included in such alleged bills of sale, and the consideration set out in one was the sum of $10,000, and in the other the sum of $8,500.   Said September con-tract was likewise recorded on September 7, 1922, in the office of the clerk of the county court of Randolph county.   It further appears that on the 25th day of April, 1923, another alleged bill of sale was made by said Gepharts to the said trust company, conveying all the property so located in Randolph county, and used upon said road, for the al-leged price of $23,500, and apparently including all the property con-veyed by said two contracts.   This last contract appears to have been recorded in the office of the clerk of the county court of Randolph county on the 20th day of November, 1923, and after the said road commission had taken over and was finishing the said work under the said contract.

From the pleadings and proof, it appears that these alleged sales were in fact chattel mortgages, to secure the loan of certain sums of money, and there appears to be due the trust company, from the Gep-harts, about $26,000, and the trust company claimed security upon all this equipment and the various other articles set out in the said three contracts to secure payment thereof.   While certain sums were paid nominally as rentals upon said amounts due from Gepharts to the trust company, yet it is admitted that such payments are really in-terest.

The plaintiff claims that, by reason of the specific language quoted from section 59 of the specifications and made a part of the Gephart contract, it has the right to the user of the equipment on the ground as may be suitable and acceptable to finish said road contract, without any liability to the trust company.   The trust company claims that it has a lien, and by reason of the chattel mortgages the right to take immediate possession of all the materials set out in its various con-tracts with the Gepharts, and have the same treated in such manner as the laws of West Virginia provide, in order to collect the various amounts due it from the Gepharts.   The trust company claims that, under the recording statutes of West Virginia, it has a prior lien there-on, superior to the claim of the road commission.

It is claimed by the plaintiff, and incidentally by the road commission, that the filing of plans and specifications, including the said section 59, and the various other things done in connection therewith, in the office of the clerk of the county court of Randolph county, before the date of the contract and before the advertisement, which was had some time prior to the date of the first contract between Gepharts and the trust company, gives to the road commission, and to any one working under it, for the purpose of finishing the road provided for therein, the right to take, appropriate, and use any and all materials and equipment cn the ground that may be suitable and acceptable therefor. The question before me applies alone to the right of the user of such equipment.

It seems that the proper definition of the word "equipment," as used here, should include all the tools and machinery, of every kind and class, that were on the ground at the time the road commission took the contract over, and which may by such commission be regarded as suitable and acceptable for the purpose of finishing the particular road under contract. On behalf of the plaintiff it is claimed that it was the intention of the Legislature of West Virginia, by the road law, when it ordered all such specifications filed in the office of the clerk of the county court, to provide that the whole world should take notice of the rights of the commission under any contract entered into, for the construction of the particular road mentioned in such plans and specifications so filed, and that every one dealing with such contractor, relative to such road project, or any of the material, or tools, or machinery, used thereon, dealt with him with full notice of the rights, duties, and powers of the commission.

It is also claimed that the fact that such road was being constructed by the State Road Commission of itself gave notice to every one of such section of the statute, and all the things that would follow therefrom, and that the acceptance by said commission of a bid thereon, and the entering into a contract with the bidder, was based upon such specifications, and the fact that the law required them to be filed, and that they were notice to any one so dealing with such contractor. The trust company claims that the recording statute (section 5, chapter 74 of the Code of West Virginia) absolutely governs in this matter. That section provides:

All deeds, deeds of trust or mortgages, "conveying real estate or goods and chattels, shall be void as to creditors and subsequent purchasers for valuable consideration without notice, until and except from the time that it is duly admitted to record in the county wherein the property embraced in such contract or deed may be."

This section was enacted long before the road law as set out in the Acts of 1921 by the Legislature of West Virginia. It is proper to say that the people of the state of West Virginia, by the amendment submitted by the Legislature of 1919, did at the November election of 1920 adopt the plan therein set out for the issuance of $50,000,000 worth of bonds for the purpose of entering into a state road construction in the state of West Virginia, and that the Legislature of 1921, in pursuance of such mandate, did enact chapter 112 of the Acts of that year, and that the state did enter upon such road projects as were per-

mitted under such amendment to the Constitution and such legislation; that literally hundreds of contracts have been let for the construction of various pieces of roads in the various counties of the state, and nothing done in the state of West Virginia since it became a state has been so widely advertised and widely commented on as this road question, and the contracts made under such authority.

In my opinion the act of the Legislature called chapter 112 should be liberally construed, for the purpose of aiding and assisting the carrying out of this declared policy of the sovereign state. I am further of opinion that the commission, and the person building this road under its direction and authority, are entitled, under the circumstances of this particular case, to the use, without liability for damages, of such equipment for the purpose of completing the said project in Randolph county.

I am further of the opinion that this is a case of irreparable damage, by reason of the fact that there are many thousand dollars worth of material now upon the location of such road project, and that, if this material is not used at once, it will greatly deteriorate in value; that the grave difficulty of getting any other machinery or equipment to finish such contract before the bad weather of winter is almost insurmountable. I am further of opinion that the public—that is, the people living on or near this road—would be necessarily damaged in every way imaginable, for many, many months, if this road is not completed at once, which it appears, from the pleadings and proof in this case, can only be done by the use of the equipment now on such road location.

There were many other questions argued in this case as grounds for a temporary injunction, but by reason of the pressure of work in my court, and the fact that there are hundreds of witnesses and persons charged with crime in attendance thereon, I have not now time to examine the same.

The temporary injunction will be granted as prayed for by the plaintiff in this cause.

---

⊦köö For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes