**DORSETT** et al. v. **STATE** ex rel. **PRICE** et al.

No. 19451.   Opinion Filed June 17, 1930.

Commissioners' Opinion. Division No. 2.

Arthur J. Marmaduke, Co. Atty., Brown & Stater, Harper & Dillard, and Bridges & Ivy, for plaintiffs in error.

Sullivan & Rice and Green & Pruet, for defendants in error.

Robert J. Bell, Monk & McSherry, and Counts & Counts, amici curiae.

EAGLETON, C. In the fall of 1925, Tom Dorsett, D. A. Cathey, and A. L. Dunkin constituted the board of county commissioners of Jefferson county, Okla. They bought for the county a Ford coupe automobile for each member of the board, which automobiles were to be used by said members in carrying on the road work in said county. Thereafter, Henry Price and L. A. Stallings, resident taxpayers of Jefferson county, caused to be served upon the individual members of the board of county commissioners, written demand, designated taxpayers' notice, directing their attention to the illegality of the purchases, and demanding that the county money expended therefor, together with a like sum as penalty, be recovered, and further advising them that in case they failed to institute action and diligently prosecute it for recovery thereof, they, as taxpayers, would file suit against them, the members of the board, for such recovery. These notices were separately made and served on the members of the board, the board itself, and the county attorney of Jefferson county. Each notice was signed by ten resident taxpayers of Jefferson county. The members of the board of county commissioners and the board of county commissioners failed, neglected, and refused to comply with the demand. Henry Price and L. A. Stallings filed three separate suits against the board of county commissioners and its individual members in the name of the state of Oklahoma, on relation of themselves, praying for judgment in each case for $680.95, the sum expended for each automobile, and like sum of $680.95 as penalty. These suits were thereafter consolidated and tried together to the court. The court rendered judgment against the individual members of the board of county commissioners, to wit; Tom Dorsett, D. A. Cathey, and A. L. Dunkin, and each of them, for the sum of $4,086. From this judgment the defendants appeal. The parties will be referred to as they appeared in the trial court.

The defendants first complain of the notice or demand which was served on them and assert that same was insufficient to give the court jurisdiction of this cause. The suit was filed pursuant to the following sections of C. O. S. 1921:

"8590. Liability of Public Officers. Every officer of any county, township, city, town, or school district, who shall order or direct the payment of any money or transfer of any property belonging to such county, township, city, town or school district in settlement of any claim known to such officers to be fraudulent or void, or in pursuance of any unauthorized, unlawful or fraudulent contract or agreement made or attempted to be made, for any such county, township, city, town or school district by any officer thereof, and every person, having notice of the facts, with whom such unauthorized, unlawful or fraudulent contract shall have been made, or to whom, or for whose benefit such money shall be paid or such transfer of property shall be made, shall be jointly and severally liable in damage to all innocent persons in any manner injured thereby, and shall be furthermore jointly and severally liable to the county, township, city, town or school district affected, for double the amount of all such sums of money so paid, and double the value of property so transferred, as a penalty, to be recovered at the suit of the proper officers of such county, township, city, town or school district, or of any resident taxpayer thereof, as hereinafter provided.

"8591. Taxpayer May Institute Suit on Failure of Officers. Upon the refusal, failure or neglect of the proper officers of any county, township, city, town or school district, after written demand made upon them by ten resident taxpayers of such county, township, city, town or school district, to institute or diligently prosecute proper proceedings at law, or in equity, for the recovery of any money or property belonging to such county, township, city, town or school district, paid out or transferred by any officer thereof in pursuance of any unauthorized, unlawful, fraudulent or void contract, made, or attempted to be made, by any of its officers for any such county, township, city, town or school district, or for the penalty provided in the preceding section, any resident taxpayer of such county, township, city, town or school district affected by such payment or transfer, after serving the notice aforesaid and after giving security for cost, may, in the name of the state of Oklahoma, as plaintiff, institute and maintain any proper action which the proper officers of the county, township, city, town or school district might institute and maintain for the recovery of such property, or for said penalty; and such municipality shall in such event be made defendant, and one-half the amount of money and one-half the value of the property recovered in any action maintained at the expense of a resident taxpayer under this section, shall be paid to such resident taxpayer as a reward."

They assert that this being in the nature of a penal suit, founded upon a penal statute, the statute should be strictly construed, and that the notice did not comply with the "demand" required by section 8591, in that the defendants were required thereby not only to recover the sums expended for the

automobiles, but in addition thereto the penalty provided by statute. The statute provides that the parties liable "shall be furthermore jointly and severally liable to the county * * * for double the amount of all such sums of money so paid * * * as a penalty to be recovered at the suit of the proper officers of such county, * * * or of any resident taxpayer thereof as hereinafter provided." The statute seems to be clear that these public officers were empowered to recover not only the sums illegally expended, but as well the penalty therefor. The notice in that respect is consonant with the statute. And further, all the things by statute required to be in the demand were therein contained, and should it contain surplusage the notice or demand is not by reason thereof destroyed and invalidated. The public officers were given the opportunity to cause the misspent county funds to be replaced and avoid being held personally liable therefor by suit.

The defendants next complain that the notice or demand was in one case served on them by an attorney for the taxpayers, and in two cases was served upon them by one of the taxpayers, and that same should have been served upon them by an officer authorized to make service of process. With this we cannot agree. The statute requires that legal demand in writing be made upon them and that the property owners, "after serving the notice," may, in the name of the state of Oklahoma, file suit against those liable in case the officers fail to perform their duty. No method of service of the notice is prescribed, so if the officers received the written notice, that is all that is required. Jones v. Balsley, 25 Okla. 344, 106 Pac. 830, 138 A. S. R. 921; Wakeman v. Greenan, 49 Okla. 785, 154 Pac. 512; Wyant v. Wheeler, 38 Okla. 68, 132 Pac. 137; Ensley v. State, 4 Okla. Cr. 49, 109 Pac. 250. The purpose of this notice is to challenge the attention of the officer or officers to an irregularity of expenditure to an illegal or fraudulent contract or dispersement of public moneys before suit is brought against them by a taxpayer. The statute further provides that their attention should be called thereto by a demand in writing, signed by ten resident taxpayers of such county. That the demand so signed was received is admitted by stipulation of the parties filed in the cause. The notice required is not a process and need not be served by an officer empowered to make service of process. It may be served by a taxpayer himself, or by his agent or attorney. The notices served by the taxpayer

and the notice served by the attorney for the taxpayer fully meet the requirements of the statute for the service of the demand or notice.

They next contend that the suit was prematurely brought as the board of county commissioners should have had a reasonable time within which to institute proceedings to recover the moneys, and that a reasonable time was not given them. This contention is without merit as the stipulation filed by the parties in the cause recites that these officers refused to comply with the demand. In addition thereto the defense in this action was not that they had insufficient time in which to institute proceedings, but that the expenditure was proper and not illegal. As they had sufficient time in which to refuse to act, and did so refuse, they will not later be heard to complain that they had insufficient time in which to comply with the demand.

The defendants next contend that the suit was not well brought, and is not sustainable for the reason that the automobile companies were likewise liable with the public officers involved, and they were not made parties to the suit. However, this statute provides that all parties involved are jointly and severally liable so suit could be brought against any one, more than one, or all of them.

The statute under which this suit was brought is penal in its nature, and is therefore to be strictly construed. The burden is on the plaintiffs to bring themselves within its provisions. Territory v. Woolsey, 35 Okla. 545, 130 Pac. 934; Buckeye Engine Co. v. City, 54 Okla. 509, 153 Pac. 1166.

We now come to the real controversy. It was stated by one of the attorneys for the defendants at the commencement of the trial in the following terms:

"We contend there is only one complaint in the cases, and that is, has a county commissioner the right to have an automobile for use in connection with the work of overseeing the construction and building of roads." (C.-M. p. 55.)

A similar case was before this court involving the purchase of a Ford automobile truck for a school district, in which case it is said:

"The real question presented by the action in the lower court is whether the school board was authorized to expend the funds of the district for the truck in question, and whether the expenditure and the remedy fall within the contemplation of sections 10383 and 10384, Comp. Stats. 1921, and on this

question there seems to be no dispute. We know of no law, and none is cited in defendant's brief, authorizing such expenditure." State ex rel. Kaler v. School District No. 35, 114 Okla. 297, 246 Pac. 842.

It is well established by numerous cases long followed in this state, that only such expenditures of public moneys are permitted and only such contracts made by public officers are enforced as are specifically or by inference and implication provided for by law. That the contract is beneficial to the county is not sufficient. Tulsa St. Ry. Co. v. State, 26 Okla. 559, 110 Pac. 373; Field v. City of Shawnee, 7 Okla. 73, 54 Pac. 318; Bd. of County Commissioners v. Watson, 7 Okla. 174, 54 Pac. 441; Allen v. Commissioners, 28 Okla. 773, 116 Pac. 175; Jackson v. Bd. of County Commissioners, 66 Okla. 75, 167 Pac. 227; Bd. of Commissioners v. Brett, 32 Okla. 853, 124 Pac. 57; News-Despatch v. Bd. of Commissioners, 61 Okla. 259, 161 Pac. 207; Hughes v. Bd. of Commissioners, 50 Okla. 410, 150 Pac. 1029; Bd. of Commissioners v. Whitney, 73 Okla. 160, 175 Pac. 112; Anderson v. Bd. of Commissioners, 44 Okla. 164, 143 Pac. 1145; Schulte v. Bd. of Commissioners, 122 Okla. 205, 253 Pac. 494; Bd. of County Commissioners v. Isenberg, 10 Okla. 378, 61 Pac. 1067. It has been but a few years since automobiles came into general practical use. To have urged the Legislature to authorize the purchase of automobiles for the use of public officers or public employees a generation ago would have been futile, but our legislation has with the development of machinery gradually and continuously extended and expanded the powers of public officials and permitted the usage of such equipment and such machinery as progress has provided and required in carrying on public as well as private business. The State Highway Commission was given, by chapter 48, Session Laws 1923-4, wide authority and power to develop a state highway system to carry out the purposes for which it was organized. The act provided:

"Section 2. The State Highway Commission is hereby vested with the powers and duties necessary and proper to enable the Commission to fully and effectively carry out all of the objects of this act, and in addition thereto, shall have the following specific powers and duties. * * *"

It also provided in section 8 thereof for the designation of the State Highway Commission and county highways, and provided for the interworking of the State Highway Commission and the boards of county commissioners of the several counties in their highway construction. In section 10, the Highway Commission was empowered "to purchase, lease or otherwise acquire any tools, machinery, supplies, material, or labor needed for such work," and that:

"The provisions of this section shall apply with equal force to the county commissioners of the various counties in all matters pertaining to county highways, and the same rights of general supervision and control given the State Highway Commission over the state highways is hereby given to the county commissioners over county highways and all matters related thereto."

Section 20 thereof contains provision for the compensation of the members of the State Highway Commission as well as all the employees thereof. Also it provides that:

"Any employee of the Commission shall be allowed actual and necessary expenses while absent from the State Capitol upon official duty, and members of the Commission shall, in addition to their per diem, be allowed their actual and necessary expenses incurred in the performance of official duty. * * *"

There can be no question but that the State Highway Commission, when it deems expedient and for the best interests of their operations and for the efficient utilization of the personnel employed by it, is authorized to buy automobiles for the Department of Highways. This authority is implied even though not specifically mentioned. Ensley v. O'Rear (Ala.) 71 So. 704; Henry v. Rogers (Ala.) 97 So. 427; Bice v. Foshee (Ala.) 97 So. 764; Townsend v. Gash (Ill.) 108 N. E. 744; Cain v. Burroughs Adding Machine Co. (Ky.) 203 S. W. 315; Board of County Commissioners v. Isenberg, 10 Okla. 378, 61 Pac. 1067. Statutes must be given their reasonable construction to effectuate the end proposed. Board of County Commissioners v. Barr, 68 Okla. 193 173 Pac. 206. Automobiles are comprehended within the terms "equipment" and "machinery," as well as in the term "vehicles." State v. Freels, 136 Tenn. 483, 190 S. W. 454; Acacia Oil & Gas Co. v. Tidal Oil Co., 91 Okla. 237, 217 Pac. 372; Landau v. Sykes (Miss.) 54 So. 3, Ann. Cas. 1913B, 197; Choctaw O. & G. Ry. Co. v. Zwirtz, 13 Okla. 411, 73 Pac. 941; Detroit Trust Co. v. Detroit F. & S. Ry. Co. (Mich.) 124 N. W. 45; Rubey v. Missouri Coal & Mining Co., 21 Mo. App. 159, 169; Western Maryland Dairy v. Maryland Wrecking & Equipment Co. (Md.) 126 Atl. 135; Maryland Casualty Co. v. Davis Trust Co. (D. C. W. Va.) 294 Fed. 573, 576; Lames v. Armstrong (Iowa) 144 N. W. 1, 2, 49 L. R. A. (N. S.) 691, Ann. Cas. 1916B, 511; Shepard v. Findley (Iowa) 214 N. W. 676, 678; Davis v. Petrinovich (Ala.) 21 So. 344, 36 L. R. A. 615; Pickering Lumber Co. v. Fuller, 117 Okla.

53, 244 Pac. 760; Cleveland v. Hightower, 108 Okla. 84, 234 Pac. 614; Osage Oil & Refining Co. v. Gormley, 123 Okla. 186, 252 Pac. 37. Under this statute the board of county commissioners has authority to buy all necessary equipment to carry out their work. Ticer v. State, 35 Okla. 1, 128 Pac. 493. It seems that the board of county commissioners had the same general authority to purchase tools, equipment, vehicles, and machinery for use in road work as the State Highway Commission.

There is, in addition to this provision of the State Highway Commission Act, a special section of the statute empowering the county commissioners to make such purchases. Section 10034, C. O. S. 1921, provides:

"Purchase of Equipment for Road Work. The board of county commissioners shall have authority to purchase such teams, vehicles, machinery, tools, portable lock-ups, and such other equipment as may be necessary for the employment of convicts or other labor upon the public roads, and to pay for the same from either the court or road and bridge fund."

Construction of statutes given by administrative officers functioning under them is a just medium to arrive at their proper interpretation. Hunter v. State, 49 Okla. 672, 154 Pac. 545; Foote v. Town of Watonga, 37 Okla. 43, 130 Pac. 597; League v. Town of Taloga, 35 Okla. 277, 129 Pac. 702; State v. Hooker, 26 Okla. 460, 109 Pac. 527; DeHasque v. A., T. & S. F. Ry. Co., 68 Okla. 183, 173 Pac. 73. The State Highway Department has, without special legislative authority, purchased many automobiles for use in its operations. The Attorney General of Oklahoma, in a number of opinions, has held that boards of county commissioners could buy automobiles for the use of employees of boards of county commissioners in carrying on their road and bridge work. However, the Attorney General of the state of Oklahoma, in an opinion written to the county attorney of Jefferson county about the time these automobiles were purchased, advised that in his opinion there was no statute which authorized a board of county commissioners to purchase cars "for the respective county officials or themselves," and advised that this opinion was given pursuant to earlier opinions of his office. It is as well true that interpretations given to statutes by the Legislature can be looked to to determine what the Legislature intended by previous legislative enactments. DeHasque v. A., T. & S. F. Ry. Co., 68 Okla. 183, 173 Pac. 73; Board of County Commissioners v. Alexander, 58 Okla. 128, 159 Pac. 311. The

Legislature, in chapter 104, Session Laws 1925, and section 1 thereof, enacted the following:

"The county commissioners in Tulsa county are hereby empowered and authorized to purchase and maintain for the use and benefit of the county commissioners in said county not to exceed three automobiles. Said automobiles are to be and shall remain the property of said county and shall be used only for the necessary business of said county."

It seems from a reading of that enactment, that the Legislature did not interpret the law as then existing, and as it existed at the time the contracts involved in this litigation **were entered into as authorizing county commissioners to buy automobiles for themselves.**

The duty of the board of county commissioners and its members, is to contract for and supervise road and bridge construction and maintenance.

The board of county commissioners of Jefferson county operates under and receives the compensation provided in section 6429, C. O. S. 1921, which, in part, provides:

"* * * In addition to the foregoing, and in lieu of all traveling and other personal expenses in connection with said road service, each county commissioner shall be entitled to ten cents (10c) per mile for each mile actually and necessarily traveled in viewing and inspecting road and bridge work in an amount not to exceed the sum of $250 in any one fiscal year. * * * Each county commissioner shall direct the general progress and advancement of road and bridge construction in his district in accord with the plan approved by the county engineer and adopted by the board of county commissioners of the county. * * *"

Section 10157, C. O. S. 1921, provides for additional per diem which they may earn in supervising road and bridge construction. As is said in 25 R. C. L. 981:

"It is a general principle of interpretation that the mention of one thing implies the exclusion of another thing; expressio unius est exclusio alterius."

And this court in Allen v. Commissioners, supra:

"Where the law prescribes the mode which such board must pursue in the exercise of such powers, it, as a rule, excludes all other modes of procedure."

The statute has clearly provided for the transportation of members of boards of county commissioners to, from, and about their work. They are to receive ten cents (10c) a mile in the performance of their duties, and this is "in lieu of all traveling and other

personal expenses." If they should think, it proper to purchase a car for one of their employees, that is within their discretionary powers. However, by law, their own transportation is provided for by the statutory mileage allowance given them. It is not within the powers of the county commissioners to determine that it would be for the best interests of the county to furnish them a car for transportation for the law specifically provides for their transportation. Neither is it within the purview of the court to look to the advisability of their attempted change of method provided for their transportation. The proper place to go to obtain relief from antiquated laws, if antiquated they be, is the Legislature. We unquestionably have laws on the statute books which inhibit the use of the products of modern scientific development, yet the Legislature is the authority which lays down rules and regulations governing the ways and means afforded public officers to carry on their work and to it should be left and is left the power to change them. There are probably counties in this state which today could ill afford to purchase its county commissioners automobiles. In other counties the work required of the county commissioners might fully justify such expenditures. But until the Legislature so provides, we must hold that the board of county commissioners of Jefferson county has no authority to purchase for the members thereof automobiles to supervise the construction and maintenance of roads and bridges.

It is suggested that these automobiles were used by the commissioners and some of their employees exclusively for road work, i. e., the supervision of road work, and in some instances the transportation of some of the workmen, or of some of the tools, or some of the equipment needed on the jobs. That in no wise affects the determination of this cause, for the court by its judgment found that these automobiles were purchased for the use of the individual members of the board of county commissioners, and this was an unlawful purchase. The lawful use of an automobile illegally purchased does not make the purchase legal.

It is next suggested that, to sustain the judgment in the suit, it is necessary that it be proven that the members of the board of county commissioners acted "unlawfully and fraudulently." However, an examination of said section 8590 does not sustain this contention. It provides:

"Every officer of any county * * * who shall order or direct the payment of any money * * * belonging to such county * * *

in a settlement of any claim known to such officers to be fraudulent or void, **or in pursuance of any unauthorized, unlawful or fraudulent contract** or agreement made or attempted to be made for any such county * * * shall be furthermore jointly and severally liable to the county * * * for double the amount of all such sums of money so paid * * * as a penalty, to be recovered at the suit of the proper officers of such county * * * or of any resident taxpayer thereof, as hereinafter provided."

The opinion of this court, in Carey, Lombard, Young, & Co. v. Hamm, 61 Okla. 174, 160 Pac. 878, is cited as establishing a rule which would be a defense to this suit. It was there held that the members of the board of county commissioners are not liable to parties with whom a contract is made, where the contract was made pursuant to appropriation made and approved by the county excise board, though the appropriation was determined to be illegal. That case merely follows the general rule that public officers acting in good faith within their apparent scope of authority are not liable to persons dealing with them relying on that apparent authority, and is founded upon the theory that all persons are presumed to know the law, that the party, who contracts with public officers, is charged with notice of their actual powers and in the absence of fraud, public officials will not be personally liable on the obligation attempted to be incurred. If the motor company had sued the individual county commissioners to obtain payment for the cars bought for the use of the said individual commissioners, this case might be controlling. But we have here a materially different situation for sections 8590 and 8591, C. O. S. 1921, specifically make public officials liable for expending public moneys on illegal contracts in a penal sum of double the amount so spent. The liability of a public officer to the other contracting party is different from his liability to his county. The Carey, Lombard, Young opinion is not controlling under the circumstances and facts obtaining in this suit.

These purchases being unlawful, they worked a constructive fraud on Jefferson county.

We now advert to certain contentions found in the amicus curiae brief filed in this cause. It was filed by attorneys living far distant from the seat of this litigation, yet it contains two novel arguments against sustaining this judgment not heretofore touched on in this opinion. They are: (1) This is a political lawsuit; (2) the plaintiffs will personally profit if the judgments are collected. Let us analyze the situation. Pol-

itics is the science of government. Sometimes because of the fumbling ineptitude of those attempting to dabble in the science for which they have no qualification, the science itself, in the public mind, exudes a malodorous stench. However, our polity is founded upon a system of checks and balances in lieu of a monarch, a czar, or dictator, and improper practices which diverge from our plan, of government as established by our Constitutions and effectuated by our legislative enactments are attempted to be avoided thereby. Minorities are protected from the ruthless domination of the temporary majorities, working through the temporarily successful, who may attempt to depart from the plans which are prescribed by our Constitutions and laws. Our courts are open to those oppressed to protect them from illegal and arrogant acts of those in power. The statutes under which this suit is brought (sections 8590, 8591, C. O. S. 1921) instances one of these checks. The Legislature in enacting them apparently thought the result which would be obtained would be beneficient. This court is not to judge of the policies promulgated by it.

As to the profit to the plaintiff, we would suggest that it is the duty of each citizen not only to obey the law, but to aid in causing the law to be enforced. Yet many of us concern ourselves but little in governmental affairs except when we ourselves are personally or financially interested. Even in apprehending criminals, it has frequently been necessary to offer and pay rewards to bring to justice those who have committed offenses. The Legislature has seen fit as a policy to reward those who cause illegally spent public funds to be recovered. We would not be justified in condemning this policy. Courts are for the purpose of interpreting and enforcing laws and policies provided by the Legislature, which is the law-making or policy-making body of our state government, and it is not a function of a court to criticize or nullify a legislative policy unless it comes within one of the inhibitions of the Constitution.

The trial court construed the law as we now interpret it. We find no error in the judgment. The cause is affirmed.

BENNETT, HERR, and DIFFENDAFFER, Commissioners, concur. HALL, Commissioner, concurs in result.

By the Court: It is so ordered .