## BOARD OF COM'RS OF HUGHES COUNTY v. YOUNG.

No. 24753.   March 19, 1935.

R. L. Busey, W. W. Pryor, and Hugh Sandlin, for plaintiff in error.

Anglin & Stevenson and Vernon Roberts, for defendant in error.

RILEY, J. Edgar M. Young, a member of the county election board of Hughes county, filed a claim against said county, in the sum of $840; $792 thereof was claimed for "sixty-six (66) days during August, September, and October, 1930, guarding boxes of primary election, July 29, 1930, at request of secretary of election board at $12 per day"; $48 was claimed for eight days' service acting as member of the county election board in the contest of primary election of district judge at $6 per day. The claim was disallowed by the board of county commissioners and Young appealed to the district court. Trial was had there, resulting in a judgment for claimant Young in the sum of $444, without mention of the number of days allowed for guarding the ballot boxes or of the number of days allowed for acting as member of the county election board, or the rate of pay allowed for either. From said judgment the county appeals.

Four assignments of error are presented: The first and fourth are the same in substance, viz., that the judgment is contrary to law. The second is, in substance, that the court erred in not finding the issues as to the law and facts in favor of the plaintiff in error for the reason that there was no appropriation or estimate made by Hughes county to cover such expenditure at the time the purported work was done, and that the uncontradicted evidence shows that the transaction under which claim is made was an attempt by defendant in error to hire himself at a fraudulent and unconscionable wage. The third is that the court erred in finding that there was a necessity for the work to be done, or that defendant in error was employed by any one in that the undisputed evidence shows that the secretary of the county election board discharged all persons claiming to guard the ballot boxes.

The contention made by plaintiff in error as to there being no appropriation made by the county to cover such expenditures cannot be sustained. There was an appropriation made by the county which was probably exhausted or about exhausted at the time defendant in error claims to have begun the work he claimed for, but a supplemental appropriation was thereafter made to cover expenses of elections in the county which was sufficient to cover the claims if otherwise legal and proper.

As to the first statement in the third assignment, the record does not disclose that the court made a finding that there was a

necessity for the work to be done for which defendant in error claims.

The finding of the court is simply:

"The court, being fully advised in the premises, finds that the plaintiff should have judgment in this action for the sum of $444, together with interest and costs."

As to the evidence going to show that all persons claiming to guard the ballot boxes were discharged by the secretary, there is a conflict.

Defendant in error testified that he was chairman of the county election board from July 29, 1930, to July 1, 1931; that as such, during said time, he attended public hearings of the election board some eight days before he filed his claim; that O. S. Evans, secretary of the county election board, called him over the telephone and asked him to come down and guard the ballot boxes; that after he came down, Evans told him that he was busy and wanted Young and U. S. Sneed, the other member of the county election board, to guard the boxes; that since they would have to be away from home and would have to pay room rent and board, he wanted them to guard the boxes day and night; that they could divide the 24 hours as they saw fit, but that he wanted one of them to be there all the time; that he, the secretary, would make no claim for himself, but would file a claim for Young and Sneed for $12 per day, and, in addition thereto, would make arrangements with a restaurant for their meals, and that he, the secretary, would put in a claim for that; that claimant commenced guarding the ballot boxes under that arrangement on the last day of July, 1930, and continued to guard the ballots for 74 days; that he was claiming $12 per day for his services; that for about 20 days he took his meals at the restaurant where the secretary had arranged therefor, but upon the proprietor expressing some doubt about receiving pay from the county he decided to pay for his meals and put in a claim himself.

Sneed, the other member of the board, who also has a claim the same as that of Young, testified in substance the same as Young.

On cross-examination they both testified, in substance, that after canvassing the returns, Evans called them in and the three members met at the office of the secretary, and it was there agreed between them that the ballot boxes should be guarded and that Young and Sneed should do the guarding.

Evans testified, in substance, that he did call the other members of the board in, and

they all agreed that the ballot boxes should be guarded for a while; that he hired a Mr. Mayfield to guard in his place, but after "I found it was illegal to pay them, I paid him off myself"; that he then concluded that he had full charge of the matter himself, whereupon he, in company with a deputy sheriff, had the lock changed on the door of the room where the boxes were kept, and told the guards that so far as he was concerned they were all fired. This was about a week after Young and Sneed had been there. Both Young and Sneed denied hearing Evans make the statement that so far as he (Evans) was concerned, the guards were all fired.

So, the evidence is somewhat in conflict as to how Young and Sneed were employed to guard the ballots, and whether, if they were ever employed by Evans, he had discharged them after about one week.

Coming to the principal question involved, whether the judgment is contrary to law, we must look to the law as to the duty and powers of the secretary of the county election board, and the statute as to compensation of the members of the county election board.

It is well settled, and both parties agree, that the law is that one who demands payment of a claim against a county must show some statute authorizing it, or that it arises from some contract, express or implied, which finds authority in law; and that it is not sufficient that the services performed for which payment is claimed were beneficial.

This has been said many times and repeated over and over again. It was said in substance as early as Board of Co. Com'rs v. Watson, 7 Okla. 174, cited in Board of Co. Com'rs v. Brett, 32 Okla. 853, 124 P. 57, which has in turn been cited with approval in some 22 subsequent cases, and as late as Dorsett v. State ex rel., 144 Okla. 33, 289 P. 298.

Defendant in error, while agreeing with the rule, contends that his claim arose out of an express contract with the secretary of the county election board, and that we need only to determine whether such express contract finds authority in law. It must be conceded that there is no law expressly authorizing the secretary of the county election board to employ guards to guard the ballot boxes at the expense of the county.

But it is contended that there is implied authority therefor.

Section 6155, C. O. S. 1921 (5808, O. S.

1931), in force when this claim arose, provided:

"* * * After the ballot box is securely locked the inspector shall not again open it, but shall deliver it in that condition to the secretary of the county election board. The county election board shall not disturb anything in the ballot box except the envelope marked 'returns,' which when canvassed shall be returned to the ballot box and the box will again be securely locked and retained by the secretary of the county election board until opened by order of court or until it shall be necessary to open the same for use at the next election, at which time the ballots shall be destroyed, provided that in no case shall the ballots be destroyed until 90 days after the election at which they were cast."

Clearly, this provision made the secretary of the county election board the official custodian of the ballot boxes after the returns had been counted. Their safe custody was a duty imposed upon him by law and a responsibility which he assumed when he accepted appointment to such position. The law provided his compensation, and it was incumbent upon him to perform all the duties of his office for the compensation provided by law. Rackley v. City of Purcell, 40 Okla. 186, 137 P. 100. Even though no salary or fee for a duty imposed upon an officer by law be provided, that will not excuse his nonperformance of the duty. 46 C. J. 1037.

In Dillard et al. v. Sappington, 151 Okla. 47, 1 P. (2d) 748, it is said:

"The county treasurer is a public official of the county. His duties and powers are those prescribed by the statutes. He is one of the ministerial officers of the county, and as such would be vested with the power and authority as enumerated in the statutes. He would have no authority to go beyond the powers given him by the statute in an attempt to bind the sinking funds of the common school districts of the county."

And:

"If the warrants in question were defective and it became necessary that a suit be filed in order to protect the funds in custody of the county treasurer, the obligation to protect said fund is personal to the treasurer and his bondsmen, and not an obligation against the funds in his hands."

If the county treasurer is without authority to employ an attorney at the expense of the county, or at the expense of a fund held by the county treasurer, to protect a fund which it was the personal duty of the county treasurer to protect, how could it be said that the secretary of the county election

board could employ others, at the expense of the county, to perform a duty which the law imposed upon him. He recognized that he could not do so and paid the man he admitted he employed to perform the duty.

We are cited to a number of well-reasoned cases which hold, in effect, that courts are not always confined to the literal meaning of a statute, but that the real intent and purpose of the Legislature will prevail over the literal import of words. Under this familiar rule the contention is that the secretary of the county election board, being made custodian of the ballot boxes, had implied authority to employ assistants in guarding the ballot boxes, or, in other words, to do whatever he deemed necessary, at the expense of the county, to enable him to perform the duty imposed upon him by law. This contention is made upon the theory that Young and Sneed were acting in the capacity of private citizens and not as members of the county election board.

To so hold would open the door to countless inroads upon the county treasurer. Every county officer when he imagined an occasion had arisen which required extra effort on his part might employ assistants, and the county would be required to pay the bills. We cannot so hold.

Another theory is presented by defendant in error: That Young and Sneed were acting in their official capacity as members of the county election board. Under this theory we are cited to certain provisions of section 6, ch. 241, S. L. 1929 (sec. 5762, O. S. 1931), relating to challenge of the correctness of announced and posted results of primary elections, etc., wherein it is provided:

"The members of said board shall receive six dollars ($6) per day and five cents (5c) per mile mileage for each mile traveled for their attendance at said hearings, and shall have authority to employ such clerical assistance as the board finds necessary, same to work under its immediate supervision."

This provision relates only to compensating members of the board for their attendance at the hearings authorized by said section, in recounting the ballots, if recount is prayed for, or in investigating alleged errors or alterations in the tabulation of the returns. It authorizes the board to employ such clerical assistance as it finds necessary for that purpose. It has no reference to the care and custody of the ballot boxes, and does not in any way alter the duty of the secretary in this regard. It does increase the compensation of the members of the

board while engaged in such hearing over that provided by section 6130, C. O. S. 1921, for their other duties. By the latter section members of the board are allowed $4 per day for the time they are actually engaged in the performance of their duties, and such members were, by that section, limited to 20 days' pay in any one year, except the secretary, who is allowed additional pay for keeping the records.

The most that can be said of the later act of 1929 is that it increased the rate of pay of the members of the board while in attendance at hearings.

Chapter 241, S. L. 1929 (sec. 5762, O. S. 1931), does not purport to amend section 6130, C. O. S. 1921 (sec. 5677, O. S. 1931). Section 6 of the act does provide additional duties, and the $6 per day and five cents per mile provisions are evidently intended to provide additional compensation.

But the pay at the rate of $6 per day is clearly limited to the time engaged in attendance at hearings of the board. There is no authority of law for a member of the county election board to draw pay at $6 per day for guarding ballot boxes either as a private citizen employed by the secretary or as a member of the board acting in that capacity.

From what the record shows at the close of the hearing, it is apparent that the trial court rejected the theory of employment by the secretary.

The record shows:

"The Court: Let the record show judgment for each plaintiff, not for the amount sued for, but for 74 days at $6 a day or $444, and an exception allowed the defendant."

It will be observed that the court allowed defendant in error pay for the full 74 days at $6. But he claimed for but eight days' attendance at hearings at $6. The other 66 days were claimed for at the rate of $12 per day, and in the claim he specifically stated that the 66 days' services were rendered "at request of secretary of election board at $12 a day."

The trial court did not indicate that defendant was being allowed compensation for any particular number of days for attendance at hearings of the board, or for any particular number of days as guard of the ballot box, either under the alleged contract of employment by the secretary or as a member of the board acting as such.

The item is erroneous as to all in excess of the eight days claimed for attendance

at hearings of the county election board in connection with the challenge of the correctness of the announced and posted result of the primary election. The evidence being uncontradicted as to said item, claimant was entitled to judgment for $48.

The judgment is reversed and the cause is remanded, with directions to enter judgment for claimant in the sum of $48.

McNEILL, C. J., OSBORN, V. C. J., and PHELPS and GIBSON, JJ., concur.