## LEAGUE v. TOWN OF TALOGA.

No. 2123.    Opinion Filed January 7, 1913.

(129 Pac. 702.)

1. **PUBLIC LANDS—Town Sites—Reservation for County Seats.**
The devolution of title to lots on town sites in the Cheyenne and
Arapaho country reserved for county-seat purposes by the Secre-
tary of the Interior is governed by sections 2387 and 2388, Re-
vised Statutes of the United States (U. S. Comp. St. 1901, pp. 1457,
1458), and the town-site laws of the state of Kansas, as modified
by the act of Congress of March 3, 1891, c. 543, sec. 17, 26
St. at L. 1026.

2. **STATUTES—Interpretation—Construction by Officers.** The con-
struction placed on statutes or constitutional provisions by offi-
cers in the discharge of their duties, either at or near the time
of the enactment, which has been long acquiesced in, is a just
medium for its judicial interpretation.

3. **PUBLIC LANDS—Town Sites—Reservation for Municipal Pur-
poses.** The authority to reserve not to exceed one-half section of
land in each county in the Cheyenne and Arapaho country for
county-seat purposes, conferred upon the Secretary of the Interior
by section 17 of the act of March 3, 1891, c. 543, 26 St. at L.
1026, embraced the power to set aside for public purposes such
lots or parcels of ground situated upon such town site as, in
the judgment of the Secretary, would be necessary for the munic-
ipal needs and conveniences of a county-seat town.

(Syllabus by the Court.)

*Error from District Court, Dewey County;*
*G. A. Brown, Judge.*

. Action by the Town of Taloga against Mary E. League.
Judgment for plaintiff, and defendant brings error. Affirmed.

*J. R. League,* for plaintiff in error.

*Adams & Smith,* for defendant in error.

KANE, J.   This was a suit in equity commenced by the
town of Taloga, defendant in error, plaintiff below, against the
plaintiff in error, defendant below, for the purpose of declaring
a resulting trust. The lots in controversy are part of the gov-
ernment town site of Taloga, which town site was reserved for

county-seat purposes by the Secretary of the Interior, in pursuance of the act of Congress of March 3, 1891, which, among other things, provided for the opening to settlement of the Cheyenne and Arapaho country. The court below granted the relief prayed for, to reverse which action this proceeding in error was commenced.

It seems that the Secretary of the Interior, in carrying out the duty cast upon him by the foregoing act of Congress, caused the tract of land reserved for county-seat purposes to be surveyed and platted into streets, alleys, and lots; that by this plat various lots or parcels of ground were shown to be reserved for public uses by marking upon such tracts, as they appeared upon the plat, the purpose for which the reservations were intended. Thus the lot in controversy was marked "Town Bldg." Other tracts were marked "For Parks," etc. This plat, after being approved by the Governor of the territory, was attached to the town site application for entry and filed with the Register of the General Land Office, who thereafter caused a copy thereof to be filed in the office of the register of deeds of the county of which the town site became the county seat. Upon the opening of the town site, notices were placed upon the lots thus reserved to accord with the markings on the plat, stating the purpose of reservation, and the soldiers and other agents of the United States government in charge of the opening directed attention to these notices, and required all prospective settlers to respect the reservations so made. This was the universal practice throughout the Cheyenne and Arapaho country. After the entry of the town site under sections 2387 and 2388 of the Revised Statutes of the United States (U. S. Comp. St. 1901, pp. 1457, 1458), as required by the above act, the town-site commissioners, appointed by the probate judge in accordance with the town-site laws of the state of Kansas, which by the same act were extended to and put in force in the territory of Oklahoma, resurveyed and replatted the town site, making their plat conform to the original plat heretofore mentioned. On the plat prepared by the commissioners the lot in controversy was also marked "Town Bldg." The proceedings of the commissioners, returned to the

probate judge, show the lot was reserved   for public purposes. In this particular case the evidence discloses that on the day of the opening the lot itself was properly marked, according to the usual custom, and that the soldiers in charge of the opening called attention to the fact that it was reserved, and prevented prospective settlers from occupying it or any of the other lots reserved for public purposes.· The first probate judge of Dewey county, of which Taloga was and is the county seat, did not execute a deed to the lot in controversy, and thus matters stood for several years, when a subsequent probate judge, finding the lot still vacant and unoccupied, executed a deed thereto to the grantors of the plaintiff in error herein.

The contention of plaintiff in error is that the attempted reservation is absolutely void and of no force and effect, for the reason that the patent issued by the United States conveyed title to the entire town site to the probate judge, "in trust for the several use and benefit of the occupants" thereof, and that neither the Secretary of the Interior nor the town-site commissioners had any authority to set apart any part thereof for public use.   This contention is based upon the theory that sections 2387 and 2388 of the Revised Statutes of the United States and the town-site laws of the state of Kansas passed in pursuance thereof governed the devolution of the lots embraced within the town site, and that that law contemplates that the entire town site shall be held in trust for the occupants.   We think counsel are slightly in error in this.   The Kansas town-site law was enacted in pursuance of that part of section 2387 of the Revised Statutes of the United States, *supra,* which provides that the disposal of lots situated upon a town site and the proceeds of sales thereof shall "be conducted under such regulations as may be prescribed by the legislative authority of the state or territory in which the same may be situated," for the purpose of vitalizing the act of Congress.   The act· of Congress itself was passed, as the title indicates, for the relief of the inhabitants of cities and towns upon public lands.   At the time of its passage a great many cities and towns of considerable population, some of which had been incorporated, had sprung up upon the public

domain by mere act of settlement and improvement, and it required action by Congress to enable the inhabitants to acquire title to the lands occupied by them from the United States. In Oklahoma conditions were materially different. Here there were large areas of unoccupied government land which the government desired to open to settlement. The act of Congress of March 3, 1891, *supra,* which was enacted for that purpose, provides, before any such lands in Oklahoma are opened to settlement:

"It shall be the duty of the Secretary of the Interior to divide the same into counties, which shall contain as near as possible not less than nine hundred square miles in each county. In establishing said county lines, the Secretary is hereby authorized to extend the lines of the counties already located so as to make the areas of said counties equal, as near as may be, to the areas of the counties provided for in this act. At the first election for county officers the people of each county may vote for a name for each county, and the name which receives the greatest number of votes shall be the name for each county: Provided, further, that as soon as the county lines be designated by the Secretary, he shall reserve not to exceed one-half section of land in each county, to be located near the center of said county, for county-seat purposes to be entered under sections twenty-three hundred and eighty-seven and twenty-three hundred and eighty-eight of the Revised Statutes: Provided, that in addition to the jurisdiction granted to the probate courts and the judges thereof in Oklahoma Territory by legislative enactments, which enactments are hereby ratified, the probate judges of said territory are hereby granted such jurisdiction in town-site matters and under such regulations as are provided by the laws of Kansas."

This section must be construed in connection with sections 2387 and 2388 of the Revised Statutes, and the town-site laws of the state of Kansas, and the whole applied to the changed conditions created by the last act.

It will be noticed that by the act of March 3, 1891, *supra,* the reservation which the Secretary of the Interior is authorized to make is primarily for county-seat purposes, and that the Secretary was required to reserve the land as soon as the county lines were designated, which, in every instance, was prior to the time there could be any occupants or settlers upon the town

site. This was clearly a modification of the former town-site laws. Congress, recognizing the necessity for county seats in the new counties about to be created in a new country entirely devoid of cities, towns, or villages, made provision for that emergency; and, in our judgment, it would be repugnant to reason to hold that, notwithstanding the reservation for county-seat purposes by the Secretary of the Interior pursuant to the last act,. the patent thereafter issued to the probate judge conveyed the title to the entire tract to the probate judge, in trust for the several use and benefit of the occupants of the town site. Effect must be given to the part of the act of March 3, 1891, *supra,* which provides for the reservation of land for county-seat purposes. The Secretary of the Interior evidently considered that the direction to him to reserve a tract of land, to be located near the center of the county, for county-seat purposes embraced the power to segregate from settlement such lots or parcels of ground as, in his judgment, would be necessary for the municipal needs and cenveniences of a county-seat town, and that the balance of the tract should be distributed to such persons as desired to settle upon and improve the same under the town-site laws. At least, that is what he did in the instant case, and the same practice was followed in all the county-seat town sites in the Cheyenne and Arapaho country; and upon the opening the people who sought to acquire lots upon these town sites, in the main, respected the reservations for public purposes made by the Secretary, or were required to do so by the soldiers and others in charge of the openings. The Governor of the territory, the probate judge, and the commissioners appointed by him did the same; and it was not until long after these town sites were opened to settlement, proved up, and deeds made, in most instances, conveying the title to the segregated lots according to their designation by the Secretary and town-site authorities, that any one claimed a right to acquire title thereto based upon the invalidity of the original reservation. We are not aware of any such attempt being made where the deeds were actually executed by the probate judge, or by persons who claimed a right to the premises by occupancy and improvement. It is only in a few cases,

like the one at bar, that a small number of persons, not original occupants, finding that the deeds had not been executed, and that the lots remained vacant and unoccupied by the municipality, sought to acquire title 'themselves by applying to subsequent probate judges for same.

Not being entitled to the lots as occupants of the town site at the time it was entered (*Winfield T. Co. v. Maris,* 11 Kan. 128), they do not base their right to a deed upon the strength of their own title, but upon the weakness of their opponents. We do not believe that that class of persons should be permitted to disturb a condition which has been generally looked upon as settled for a great number of years, and under which valuable property rights have arisen. Many of the lots set aside have been long used for the public purposes for which they were variously designated, and permanent and valuable improvements have been placed thereon. The practical construction placed upon the acts under discussion by the Secretary of the Interior, the Governor of the territory, and the town-site commissioners who were immediately charged with their execution, has remained unquestioned for a long period of time, and, as it seems reasonable and just to us, we are constrained to adopt it. The construction placed on statutes or constitutional provisions by officers in the discharge of their duties, either at or near the time of the enactment, which has been long acquiesced in, is a just medium for its judicial interpretation. *Hoffman v. County Com'rs,* 3 Okla. 325, 41 Pac. 566; *Higgins v. Brown,* 20 Okla. 355, 94 Pac. 703; *State v. Hooker,* 26 Okla. 460, 109 Pac. 527.

Finding no error in the record, the judgment of the court below must be affirmed.

TURNER, C. J., and HAYES and WILLIAMS, JJ., concur; DUNN, J., absent, and not participating.