## FOOT et al. v. TOWN OF WATONGA.

No. 2325. Opinion Filed February 18, 1913.

(130 Pac. 597.)

1. **PUBLIC LANDS—Town Sites—Statutory Provisions.** The devolution of title to lots on town sites in the Cheyenne and Arapaho country reserved for county seat purposes by the Secretary of the Interior is governed by sections 2387 and 2388, Revised Statutes of the United States (U. S. Comp. St. 1901, pp. 1457, 1458), and the town site laws of the state of Kansas as modified by Act Cong. March 3, 1891, c. 543, 26 St. at L. 1026.

2. **CONSTITUTIONAL LAW**—Statutes—Construction—**Practical Construction by Officers.** The construction placed on statutes or constitutional provisions by officers in the discharge of their duties, either at or near the time of the enactment, which has been long acquiesced in, is a just medium for its judicial interpretation.

3. **PUBLIC LANDS**—**Reservation for County Seat.** The authority to reserve not to exceed one-half section of land in each county in the Cheyenne and Arapaho country for county seat purposes conferred upon the Secretary of the Interior by section 17 of the Act of March 3, 1891 (chapter 543, 26 St. at L. 1026), supra, embraced the power to set aside for public purposes such lots or parcels of ground situated upon such townsite as, in the judgment of the Secretary, would be necessary for the municipal needs and conveniences of a county seat town.

4. **LIMITATION OF ACTIONS**—**Against Whom Available**—**Municipal Corporations.** The generally accepted doctrine is that the maxim, "Nullum tempus occurrit regi," is not restricted in its application to sovereign states or governments, but that its application extends to and includes public rights of all kinds, and that it applies to municipal corporations as trustees of the rights of the public, and protects from invasion and encroachment the property of the municipality which is held for and devoted to public use, no matter how lax the municipal authorities may have been in asserting the rights of the public.

5. **ESTOPPEL**—**Equitable Estoppel**—**Persons Estopped**—**Municipality.** Where a municipality holds title to a town lot for the use of the general public, an estoppel in pais, based on a failure of its officers to do their duty, cannot ordinarily be asserted against it to defeat the rights of the public in the property.

(Syllabus by Brewer, C.)

*Error from District Court, Blaine County;*
*James R. Tolbert, Judge.*

Suit by H. A. Foote against W. B. Piper, and the town of Watonga, Blaine County, was made a party defendant, and filed an answer and cross-petition. From a judgment in favor of the town, the plaintiff and original defendant bring error. Affirmed.

Opinion by BREWER, C. This suit involves the title to lot 1, block 48, in the town of Watonga, Blaine County, Okla. On March 1, 1906, H. A. Foote filed his petition against W. B. Piper in the district court of Blaine county, asserting ownership to the lot in question, and asking that a quitclaim

deed to the property be declared a mortgage, tendering payment, and for cancellation. Later the town of Watonga came into the case with leave of court as a party defendant, and filed an answer and cross-petition asserting title, both legal and equitable, to the lot in question as against both Foote and Piper, each of whom filed answer to the cross-petition, and the case was tried on the issues raised thereon; the controversy between Foote and Piper not being developed. Each of these original parties appear to have made common their cause against the town of Watonga. A jury was waived, and the case was submitted to the court upon the evidence, and a finding made and judgment entered in favor of the town, from which both Foote and Piper join in an appeal as plaintiffs in error. The lot in controversy is a part of the government town site of Watonga, which town site was reserved for county seat purposes by the Secretary of the Interior, in pursuance of the Act of Congress of March 3, 1891, which, among other things, provided for the opening to settlement of the Cheyenne and Arapaho country. It seems that the Secretary of the Interior, in carrying out the duty cast upon him by the foregoing act of Congress, caused the land set apart for county seat purposes to be surveyed and platted into streets, alleys, and lots; that on this plat various lots or parcels of ground were shown to be reserved for public uses by marking upon such lots as they appeared upon the plat the purpose for which the reservations were intended; thus the reservation for high school building was marked on the plat "H. S. B." The lot intended for a post office was marked, "U. S. P." Other tracts, "For Parks," etc. The lot in controversy was marked "Town Bldg." This plat, after being approved by the Governor of the territory, was attached to the townsite application for entry, and filed with the Register of the General Land Office, who caused a copy thereof to be filed in the office of the register of deeds of the county of which the town site became the county seat.

The contention of plaintiff in error is (1) that the attempted reservation is absolutely void and of no force and effect,

for the reason that the patent issued by the United States conveyed title to the entire town site to the probate judge, "in trust for the several use and benefit of the occupants" thereof, and that neither the Secretary of the Interior nor the townsite commissioners had any authority to set aside any part thereof for the public use; and, further, that, if such authority existed, the marking on the plat, and the action of the commissioners as shown in this case, was not sufficient to constitute a reservation or dedication to public use.

(2)   Plaintiffs in error further contend that even if the authority existed to make the reservation, and if what was done was sufficient to constitute a reservation or dedication, that the town is estopped from asserting its rights because of certain conduct of its agents and officers.

The first contention of plaintiffs in error cannot be sustained.   The identical question presented was raised in the case of *League v. Town of Taloga,* 35 Okla. 277, 129 Pac. 702. That case was in the same Indian country, the town site was reserved about the same time under the same laws, rules, and regulations, and the lot in question was reserved as in the instant case by marking thereon "Town Bldg.," so that on this branch of the case the former opinion is controlling.   The syllabus is as follows:

"The devolution of title to lots on town sites in the Cheyenne and Arapahoe country reserved for county seat purposes by the Secretary of the Interior is governed by sections 2387 and 2388, Revised Statutes of the United States (U. S. Comp. St. 1901, pp. 1457, 1458,) and the townsite laws of the state of Kansas as modified by the Act of Congress of March 3, 1891 (26 St. at L. 1026.)   The construction placed on statutes or constitutional provisions by officers in the discharge of their duties, either at or near the time of the enactment, which has been long acquiesced in, is a just medium for their judicial interpretation. The authority to reserve not to exceed one-half section of land in each county in the Cheyenne and Arapahoe country for county seat purposes conferred upon the Secretary of the Interior by section 17 of the Act of March 3d, *supra,* embraced the power to set aside for public purposes such lots or parcels of ground

situated upon such town site as, in the judgment of the Secretary, would be necessary for the municipal needs and conveniences of a county seat town."

This lot in question was reserved and dedicated to the use of the public in 1892. The plaintiff Foote went on the lot about the year 1900, and built a stable, and kept some animals on it. He states his labor to have been of the value of $15, and that he used $5 worth of material. Thereafter, about March 11, 1901, about the time a railroad came through the town, he leased the lot to a lumber company for $5 a month, and this company erected some sheds and a small building for an office. The lot was assessed and taxes collected for the years 1901-1906. The $20 for material and labor represents plaintiff's expenditure on the lot. These sums were expended and the possession taken before there had been any taxes assessed and collected, so that fact did not influence him to take possession of the lot and improve it. His possession was wrongful, and the facts disclosed do not operate as an estoppel against the municipality, holding the lot for the use of the public. The general rule is stated thus by Judge Dillon, in his work on Municipal Corporations ([5th Ed.] Vol. 3, sec. 1193):

"A careful examination of the decisions shows that the generally accepted doctrine is that the maxim, 'Nullum tempus occurrit regi,' is not restricted in its application to sovereign states or governments, but that its application extends to and includes public rights of all kinds, and that it applies to municipal corporations as trustees of the rights of the public, and protects from invasion and encroachment the property of the municipality which is held for and devoted to public use, no matter how lax the municipal authorities may have been in asserting the rights of the public."

There are a number of cases recognizing the principal of an estoppel in pais as applicable to municapilities in their public character, but an examination will show that they are exceptional cases resting upon such a state of facts, that to do justice requires that an equitable estopped shall be asserted even against the public. Judge Dillon thinks such cases form a law

unto themselves. Dillon, Municipal Corporations, 1194. It is not necessary to review those decisions, nor to consider how far, if at all, this court would follow them. The facts of this case do not justify the application of the principles they involve. Indeed, in this case, there is no legitimate element of an estoppel. The taxing of the lot was after the plaintiff had taken possession, and put the small improvements on it. There was no authority in law to levy and collect the tax against the public property. The fact that it was done had no influence on plaintiff in going upon it. Nor could it under the circumstances work to his advantage. *Town of San Leandro v. Le Breton*, etc., 72 Cal. 170, 13 Pac. 405; *Philadelphia Mfg. & T. Co. v. City of Omaha*, 63 Neb. 280, 88 N. W. 523, 93 Am. St. Rep. 442; *Ralston v. Weston*, 46 W. Va. 544, 33 S. E. 326, 76 Am. St. Rep. 834; 3 Dillon, Municipal Corp. (5th. Ed.) sec. 1194; citation of authorities and note.

The judgment of the court below should be affirmed.

By the Court: It is so ordered.