## WILLIAMS v. CONTINENTAL CONST. CORP.

No. 23700.   June 26, 1934.

Loofbourrow, Holcomb & Loofbourrow and Miles & Miles, for plaintiff in error.

J. J. Hedrick, Geo. P. Garver, and Stacy Wells, for defendant in error.

WELCH, J.   This appeal is from the district court of Beaver county. Plaintiff in error, Helen M. Williams, was defendant below, and defendant in error, Continental Construction Corporation, was plaintiff in the trial court. The parties will be herein referred to as plaintiff and defendant, as they appeared in the trial court. Plaintiff commenced the action seeking to exercise the right of eminent domain to condemn certain lands belonging to defendant for right of way purposes for the construction of an interstate gas pipe line for the purpose of transporting gas from the gas fields of Pampa, Tex., to the city of Chicago.

Plaintiff's application to the district court for the appointment of commissioners to assess the damages occasioned defendant's property by the appropriation of some six acres of land for pipe line right of way purposes was filed July 16, 1930. The first commissioners appointed, by their report, assessed such damages at $342. Defendant filed motion to vacate this report, and such report was vacated by agreement. Other commissioners were appointed and by their report fixed such damages at $1,000. Defendant filed motion to vacate this report, and the motion was confessed and the second report vacated. Further commissioners were appointed and filed their report assessing the damages at $2,500, and thereafter the plaintiff filed its demand for a jury trial.

A trial to a jury was had on November 4, 1931, resulting in a verdict and judgment assessing the damages at $1,000, and it is from this judgment that defendant appeals.

The defendant contends that the plaintiff, being a foreign corporation organized and existing under the laws of the state of Delaware, is without authority of law to exercise the right of eminent domain within this state. The direct question appears not to have been heretofore decided by this court.

The defendant quotes from 20 C. J. 516, as follows:

"The power of eminent domain lies dormant in the state until the legislative action is had pointing out the occasions, the modes, and the agencies for its exercise."

Our attention is also directed to section 31, art. 9, of the Constitution, as follows:

"Corporation must incorporate in this state before it has right of eminent domain. No railroad, oil pipe line, telephone, telegraph, express or car corporation organized under the laws of any other state, or of the United States, and doing business or proposing to do business in this state, shall be entitled to the benefit of the right of eminent domain in this state until it shall have become a

body corporate pursuant to or in accordance with the laws of this state."

It will be observed from the language of the above-quoted constitutional provision that railroads, oil pipe lines, telephones, telegraphs, express or car corporations incorporated in a foreign state are expressly denied the right of eminent domain "until it shall have become a body corporate pursuant to or in accordance with the laws of this state." It appears to be conceded by the parties here that the plaintiff is such a corporation as is embraced within the terms of such constitutional provision. Such provision of the Constitution unquestionably contemplates that a foreign corporation such as is described therein may, by complying with the requirements of the statutory and constitutional laws of the state, acquire the right of eminent domain. At a very early date after the adoption of the Constitution, the Legislature, by clear and concise language, provided that foreign railroad corporations might exercise the right of eminent domain within the state by filing with the Secretary of State a resolution accepting the provisions of the Constitution and agreeing that the Constitution and laws of this state applying to domestic corporations shall apply to it, and declaring that when such resolution is so filed the said foreign corporation would become a domestic corporation. Section 11985, O. S. 1931. And while this statutory provision relating to railroads is only incidentally important here, it appears to throw some light on the policy of the state, through its Legislature, as regards the action necessary on the part of foreign corporations in order that they may "become a body corporate pursuant to or in accordance with the laws of this state."

The procedure thus required of foreign railroad corporations is very similar to the requirements of section 9738, O. S. 1931, chapter 2, art. 4, O. S. 1931, relating to the licensing of foreign corporations to do business in this state. We have been unable to find where the Legislature has made provision by specific language for a foreign corporation to reincorporate within this state, although ample statutory provision is made for the licensing of foreign corporations to do business within the state. It appears that the Secretary of State, and the Corporation Commission, at all times since the adoption of the Constitution and the enactment of the cited statutory provisions have construed the compliance by foreign corporations with the laws regulating the licensing to do business within this state as being the steps necessary to be taken by such corporation to become a "body corporate pursuant to or in accordance with the laws of this state." This construction placed thereon for a long period of time by the public officials charged with the duty of chartering domestic corporations and licensing foreign corporations to do business within the state, and with the duty of the supervision in many respects of all corporations, both domestic and foreign, doing business within the state, was likely influenced by what clearly appeared to be the policy of the state as announced by the Legislature with reference to foreign railroad corporations, as contained in section 11985, supra, and was doubtless further influenced by the thought that it was the policy of the state to avoid discrimination against a foreign corporation. It is true that the Legislature, by its enactment fixing the domicile of persons, firms, and corporations transacting business within the state, as found in sections 119 to 124, O. S. 1931, and in its enactment of laws pertaining to the licensing of foreign corporations to do business within the state, do not within themselves grant to such corporations the right of eminent domain as provided by section 124, O. S. 1931, which has been called to our attention by the defendant, but all such enactments indicate a policy of permitting foreign corporations to enjoy the same privileges enjoyed by like domestic corporations without discrimination.

Chapter 99, S. L. 1913, confers the right of eminent domain upon domestic pipe lines, and section 7 thereof, same being section 11524, O. S. 1931, with reference to foreign corporations, provides as follows:

"Foreign corporations organized under the laws of any other state or territory, or the United States, and doing or proposing to do business in this state, and which shall have become a body corporate pursuant to or in accordance with the laws of this state, and which, as hereby provided, shall have registered its acceptance of the terms hereof, shall receive all the benefits by this act provided."

It appears from such provision of section 11524, supra, that the plaintiff corporation thereby acquired the right of the exercise of eminent domain, provided it had "become a body corporate pursuant to or in accordance with the laws of this state."

It is conceded that plaintiff had complied with all of our statutory laws relating to the licensing of a foreign corporation to do business within the state, and had been so licensed. It had filed with the Corporation

Commission of the state the following instrument:

"Acceptance by a foreign corporation of sections 7910 and 7911 of article 11, chapter 68 of Compiled Statutes of Oklahoma, 1921. To the Corporation Commission of Oklahoma:

"The Continental Construction Corporation, a corporation, organized and existing under and by virtue of the laws of the state of Delaware, having on the 6th day of May, 1930, become a body corporate pursuant to and in accordance with the laws of the state of Oklahoma, and having received from the Secretary of State a certificate dated May, 1930, qualify as a foreign corporation to transact business within the state of Oklahoma; that it appointed Charles McCafferty, of Oklahoma City, Okla., as agent for service, and that it has fully met all the requirements of the statutes required to be performed through the office of the Secretary of State, and a certificate from the Secretary of State, dated May 6, 1930, that said corporation has filed in the office of the Secretary of State an unauthenticated copy of its articles of incorporation and the appointment of Charles McCafferty of Oklahoma City, in the county of Oklahoma, as resident agent to accept service of process as required by the laws of the state of Oklahoma, and a license from the Corporation Commission, No. 92082, dated May 8, 1930.

"Now, therefore, Continental Construction Corporation, pursuant to sections 7910 and 7911 of article 11, chapter 68 of the Compiled Statutes of Oklahoma, 1921, hereby files in the office of the Corporation Commission of Oklahoma this proper and explicit authorized acceptance of the provisions of the Act of 1913 referred to in said sections 7910 and 7911 and the provisions of said sections and of the Constitution of the state of Oklahoma, and hereby registers its acceptance of the terms thereof as required by said sections 7910 and 7911.

"In witness whereof, said Continental Construction Corporation has caused its name to be subscribed hereunto by its vice-president and has caused this instrument to be attested by its Secretary under its corporate seal, this thirteenth day of May, 1930."

"Continental Construction Corporation,
"By Robert S. Sloan, Vice President."
"(Seal)
"Attest: Dewey C. Bailey, Jr., Secretary."

The Corporation Commission had made the following order:

"Before the Corporation Commission of the State of Oklahoma

"In the matter of the acceptance of the Continental Construction Corporation of the requirements and provisions of sec. 7910 and 7911 of article 11, chapter 68 of C. O. S.

1921, and the right of said company to exercise eminent domain. Case No. 10083.

"Journal Entry No. 1788.

"Upon this 23rd day of May, 1930, the Continental Construction Corporation, organized and existing under and by virtue of the laws of the state of Delaware, and having become a body corporate pursuant to and in accordance with the laws of the state of Oklahoma, and having received from the Secretary of State a certificate certifying that said corporation, did on the 6th day of May, 1930, qualify as a foreign corporation to transact business within the state of Oklahoma, filed its authorized and explicit acceptance of the provisions of the act of 1913, is required by sections 7910 and 7911, of art. 11, chapter 68, C. O. S. 1921. This action was taken by the Continental Construction Corporation for the purpose of being authorized to exercise the right of eminent domain, all as required by said sections of said chapter and article.

"Now, on this 23rd day of May, 1930, the Commission having under consideration said acceptance, and a plat showing the location of the said proposed pipe line which is to be constructed, together with the approximate location of the gate valves and other equipment to be used in connection therewith, it is the opinion of the Commission that said Continental Construction Corporation has complied with sections 7910 and 7911 of art. 11, chapter 68, C. O. S. 1921, and is therefore entitled to exercise the right of eminent domain as set forth in said sections.

"It is therefore the order of the Commission, premises considered, that the explicit and authorized acceptance of the provisions of said sections 7910 and 7911, art. 11, chapter 68, C. O. S. 1921, be and the same are hereby accepted for filing and that said Continental Construction Corporation having filed its explicit and authorized acceptance of the provisions of said sections is entitled to exercise the right of eminent domain, all as set forth in said sections of the statute made and provided.

"Done at Oklahoma City this the 27th day of May, 1930.

"Corporation Commission of Oklahoma.
"C. C. Childers, Chairman
E. R. Hughes, Commissioner.
"Attest: E. D. Hicks, Secretary."

Plaintiff had complied with every possible requirement of the statutes, and had done all which it was permitted to do under the law of the state in order that it might conduct its business as other corporations engaged in similar enterprises.

Inasmuch as section 31, article 9, of the Constitution clearly contemplates that such foreign corporations may, by compliance with the laws of the state, acquire the right of

eminent domain, and inasmuch as the corporation had complied with every provision of the Constitution and statutes relating to foreign corporations, we are of the opinion that plaintiff corporation thereby became a body corporate pursuant to and in accordance with the laws of this state, within the terms and contemplation of said section of the Constitution, particularly in view of the general policy of the state with reference to foreign corporations as reflected in its statutory laws, and in view of such construction placed thereon since the establishment of the state by the public officials charged with the administration of these laws.

"The construction placed on statutes or constitutional provisions by officers in the discharge of their duties, either at or near the time of the enactment, which has been long acquiesced in, is a just medium for its judicial interpretation." Foot et al. v. Town of Watonga, 37 Okla. 43, 130 P. 597.

See, also, League v. Town of Taloga, 35 Okla. 277, 129 P. 702. Any other interpretation would render the above-quoted provision of section 11524, O. S. 1931, meaningless and useless. It would be, at least, an idle and useless thing for the Legislature therein to say that a foreign corporation may exercise the right of eminent domain only after it shall have become a body corporate pursuant to and in accordance with the laws of this state, if there is no provision in any manner for such corporation becoming such body corporate. Such provision, as we view the matter, reflects the intention of the Legislature to permit foreign corporations to exercise the right of eminent domain when they have complied with the laws of the state, and argues affirmative knowledge, and acceptance by the Legislature, of a policy toward such foreign corporations which has been followed by the state since its establishment, of considering them a body corporate within the meaning of section 31, art. 9, of the Constitution when they have complied with the statutes as here shown.

Further complaint is made that the evidence does not sustain the verdict of the jury and judgment of the court. We have examined the entire evidence at length and find no merit in this contention. The question for determination was the amount of damages sustained by the use of defendant's land for right of way purposes. Plaintiff on this point introduced several witnesses who were adjoining landowners and farmers, and men of farming experience and with knowledge of land values, all of whom placed the amount of damages ranging from nothing to not more than $750. True, the defendant's witnesses all testified to damages not lower than $2,500. It was the province of the jury to determine the amount within the range of those figures. It determined the amount to be $1,000, and we conclude that such determination is amply supported by the evidence.

We likewise find no merit in the contention that the court erred in refusing to permit defendant to amend her answer and cross-petition by verifying the same. The point made is that having failed to verify her answer, she thereby admitted the existence of the corporation plaintiff by virtue of section 220, O. S. 1931. No abuse of the court's discretion is shown in its ruling thereon, as the plaintiff made due proof of its incorporation and its compliance with the laws of the state of Oklahoma, as hereinabove discussed.

The defendant also complains of the action of the court in assessing all of the costs of the case to her. Section 11934, O. S. 1931, providing for appeals from the district court in such cases, provides in part as follows:

"* * * The corporation shall in all cases pay the costs and expenses of the first assessment. * * *"

She contends that in any event the plaintiff should be required to pay the cost of the first and second assessments. The journal entry as relates to this recites:

"* * * and it is further ordered and decreed that the costs of this action be taxed to the defendant. * * *"

The plaintiff in its brief construes the quoted portion of the journal entry as referring only to the costs which accrued in the matter subsequent to the first and second assessments, and this construction which plaintiff places thereon would appear to leave no controversy between the parties. We, therefore, conclude that the defendant should not herein be required to pay any cost of assessments prior to the third assessment herein.

Further complaint is made that the court erred in ruling out competent evidence offered by the defendant, and in admitting incompetent evidence offered by plaintiff. The purported incompetent evidence complained of is in regard to a discussion between plaintiff's agent and defendant's agent prior to the condemnation proceedings looking toward procuring right of way easements by voluntary contract. The agency is admitted

514

on the part of both parties, and the evidence is to the effect that, although an effort was made to procure the right of way in such manner, the agents of the parties were unable to reach an agreement. The complaint is based largely upon the refusal of the court to permit the defendant to inquire of the witnesses in the presence of the jury as to certain details of the conversation between the parties. No prejudicial error is shown in this.

The defendant argues in her brief alleged error of the court in refusing to give three separate requested instructions. The first of these was a detailed statement to the jury of the amount of land being taken by the plaintiff in the proceedings, and the rights which it acquired thereto and thereunder. It is highly probable that some portion of same was an invasion of the province of the jury, in that it purported to instruct on questions of fact which should properly be determined by the jury from the evidence. There is nothing in the record from which it might be concluded that the jury did not have a thorough understanding of the nature of the rights acquired by plaintiff. The other requested instructions were more nearly designed for the purpose of excluding from the jury testimony of certain of plaintiff's witnesses, upon the theory that they had not qualified themselves as to knowledge of land values upon giving their testimony relative to the value of the real estate involved and the damages sustained. These questions had been previously passed upon by the court adversely to defendant's contention, and we think correctly so.

The judgment is affirmed.

RILEY, C. J., CULLISON, V. C. J., and SWINDALL, ANDREWS, McNEILL, and OSBORN, JJ., concur. BUSBY and BAYLESS, JJ., absent.