2011 OK 55

**D–MIL PRODUCTION, INC., Appellee,**

**v.**

**DKMT, CO., Appellant.**

**No. 99715.**

Supreme Court of Oklahoma.

June 21, 2011.

Rehearing Denied Sept. 12, 2011.

Ralph A. Sallusti, Oklahoma City, for Appellee.

James Bruce Blevins, Purcell, for Appellant.

PER CURIAM.

¶1 The Appellant-landowner, DKMT (Landowner), seeks review of the district court's August 7, 2003, certified order sustaining D–Mil Production, Inc.'s (D–Mil) Motion for Summary Judgment as to all issues concerning D–Mil's status as a "pipeline company" for purposes of eminent domain. The primary issue on appeal is whether D–Mil established that it meets the constitutional and statutory definition of a "pipeline company." Based on our review of the summary judgment record and applicable law, we reverse the district court's order.

## BACKGROUND AND PROCEDURAL HISTORY

¶2 D–Mil is a Texas corporation, authorized to do business in the State of Texas. Its Articles of Incorporation, as filed in the State of Texas, permit D–Mil "to transact any or all lawful business for which Corporations may be incorporated under this act."

¶3 D–Mil became domesticated in the State of Oklahoma on December 8, 1985. Its Amended Articles of Domestication advised that the "business which the Corporation proposes to do in the State of Oklahoma is the business the Corporation is authorized to do in the jurisdiction of its incorporation." The Articles of Domestication also stated that D–Mil's purpose of transacting business in Oklahoma was for "mineral leasing." However, when required to designate in its Articles of Domestication "the total length of line everywhere, and the length of line to be located in Oklahoma during the current fiscal year," D–Mil answered "N/A."

¶4 On May 28, 2003, D–Mil initiated this condemnation proceeding in McClain County. It sought to appropriate easements from Landowner for the purpose of construction, operation, and maintenance of a natural gas pipeline for the transmission of natural gas. D–Mil's petition attached a plat of Landowner's land, including the land description designating the centerline of the easement, and the natural gas pipeline to be located thereon. D–Mil contended the easements and rights of way were necessary for its natural gas pipeline, as "authorized by its Articles of Incorporation and the laws of the State of Oklahoma." D–Mil asserted that the easements and rights of way described will remain the property of Landowner, subject to D–Mil's use as described in its petition. The petition also alleges that D–Mil's good faith efforts to secure easements and rights of way from Landowner were unsuccessful.

¶5 On June 17, 2003, Landowner filed an Answer and Counterclaim. Its answer challenged D–Mil's status as a "pipeline company," the necessity of the right of way, and D–Mil's statutory authority to exercise eminent domain. Landowner alleges that D–Mil's Articles of Domestication, filed of record in the Office of the Secretary of State of the State of Oklahoma, stated in the application

that the provisions concerning pipeline companies are not applicable to D–Mil's corporate structure. Landowner contended further that D–Mil failed to comply with the title 52 requirements, and D–Mil's continued operations constitute an unlawful act pursuant to section 25 [1]; and is punishable under section 31 [2] of the Oklahoma Statutes. Lastly, Landowner's counterclaim asserted D–Mil committed trespass on its property when D–Mil entered Landowner's property to procure the plat.

¶ 6 D–Mil subsequently moved to strike and dismiss Landowner's Answer and Counterclaim, and motioned for summary judgment on all issues raised in Landowner's Answer. Specifically, D–Mil alleged that a court's jurisdiction in condemnation proceedings is limited to three substantive pleadings—a petition, an objection to the commissioners' report, and a demand for jury trial. Answers and counterclaims, however, are not among them. It further defended that the survey of Landowner's property was lawful, and asserted that all foreign corporations domesticated in Oklahoma may exercise eminent domain. In support, D–Mil proffered its State of Oklahoma Certificates of Good Standing and Authority issued by the Office of the Secretary of the State of Oklahoma; and the Acceptance attaching the Plat filed in the Corporation Commission.

¶ 7 Landowner, on the other hand, denied D–Mil's capacity to exercise eminent domain and contended not all foreign corporations are vested with this right upon domestication. Landowner urged the district court to take notice that D–Mil failed to establish it is a domesticated pipeline company authorized to maintain an action for eminent domain in Texas-a condition precedent to becoming a "pipeline company" in Oklahoma under title 18, section 1130B(2)e (2001) [3], of the Oklahoma Statutes. Landowner asserted D–Mil

1. It shall be unlawful for any corporation, joint stock company, limited copartnership, partnership or other person, now or hereafter engaged in the business of carrying or transporting natural gas for hire or compensation or otherwise, within the limits of this act and not becoming a common purchaser as defined by, and accepting the provisions of this act, to own or operate, directly or indirectly any gas well or wells, gas leases, or gas holdings or interests in this state, after six (6) months next after the approval of this act, and each and every of said corporations, joint stock company, limited copartnership, partnership or other persons shall divest themselves of all legal or equitable ownership, interest or control, directly or indirectly, in gas well or wells, gas leases or gas holdings or interest in this state.

Okla. Stat. tit 52, § 25 (2001).

2. Any person, copartnership, or corporation, its agent or employees, violating any of the provisions of this act, or any order of a court of competent jurisdiction of this state, or the Corporation Commission, pursuant to the jurisdiction conferred by this act, shall, upon conviction thereof, be fined a sum of not less than One Thousand Dollars ($1,000.00), nor more than Five Thousand Dollars ($5,000.00), or imprisonment not less than six (6) months, nor more than one (1) year, or by both such fine and imprisonment for each and every violation of this act; but in case the monthly runs or takings or transportation of gas shall average so as to be without discrimination, as herein provided, a transaction or transactions of any particular day or week or portion of a month shall be disregarded; and the court of competent jurisdiction of the county in which the omission or commission, which is in violation of this act, has occurred, shall have jurisdiction of an action under the penal code for the punishment thereof; and that said penalties shall not be exclusive of civil liability.

Okla. Stat. tit 52, § 31 (2001).

3. Under the General Corporation Act,

A. As used in the Oklahoma General Corporation Act, the words "foreign corporation" mean a corporation organized pursuant to the laws of any jurisdiction other than this state.
B. No foreign corporation shall do any business in this state, through or by branch offices, agents or representatives located in this state, until it shall have paid to the Secretary of State of this state the fees prescribed in Section 1142 of this title and shall have filed with the Secretary of State:
1. A certificate issued by an authorized officer of the jurisdiction of its incorporation evidencing its corporate existence. If such certificate is in a foreign language, a translation thereof, under oath of the translator, shall be attached thereto;
2. A statement executed by an authorized officer of the corporation and acknowledged in accordance with the provisions of Section 1007 of this title, setting forth:
a. the mailing address of the corporation's principal place of business, wherever located,
b. the name and street address of its additional registered agent in this state, if any, which agent shall be either an individual resident in this state when appointed or another corporation, limited

had not satisfied the statutory scheme. In support, Landowner tendered D–Mil's Articles of Domestication and Correction issued by the State of Texas; Amended Certificate of Qualification filed with the Oklahoma Secretary of State; proof of D–Mil's Franchise Tax Return filed with the Oklahoma Tax Commission; and several Assignments and Bills of Sale of oil and gas leases for properties located in McClain County, Oklahoma. Landowner further alleged D–Mil's admissions contained in the Oklahoma Secretary of State filings, described its business purpose in Oklahoma as "mineral leasing," but neither the Texas nor the Oklahoma filings submitted designate D–Mil's alleged business activities as transporting or transmitting natural gas by pipelines.

¶ 8 By order dated June 23, 2003, three commissioners were appointed to inspect and determine just compensation for the proposed easements and rights of way described in D–Mil's petition. Landowner immediately sought to vacate the appointment over D–Mil's objection. On July 10, 2003, the Commissioners filed their report and assessed damages at $5,280.

¶ 9 The district court issued a cumulative order on August 7, 2003, to resolve all pending motions and claims. It began by overruling Landowner's Motion to Vacate Appointment of Commissioners; and sustained, in part, D–Mil's Motion for Summary Judgment. Specifically, the court determined that no material issues of fact or law existed, and found as a matter of law, that D–Mil was a Texas corporation, properly domesticated in Oklahoma. The court concluded that D–Mil transported natural gas to market as part of its lawful business activities. Based on that determination, the district court found that D–Mil was "entitled to file an action for eminent domain under 52 O.S. (2001) § 1, et seq. and § 26, et seq.; 18 O.S. (2001) § 1, et seq.; 60 O.S. (2001) §§ 53 and 55." Additionally, Landowner was directed to file any other objections, to the Report of the Commissioners, within the statutorily time prescribed.

¶ 10 The district court also found that the August 7, 2003, order was final and subject to immediate appeal under title 12, sections 953 [4] and 994(A),[5] of the Oklahoma Statutes. Landowner appealed.[6]

liability company, or limited partnership authorized to transact business in this state,
c. the aggregate number of its authorized shares itemized by classes, par value of shares, shares without par value, and series, if any, within any classes authorized, unless it has no authorized capital,
d. a statement, as of a date not earlier than six (6) months prior to the filing date, of the assets and liabilities of the corporation,
e. the business it proposes to do in this state and a statement that it is authorized to do that business in the jurisdiction of its incorporation, and
f. a statement of the maximum amount of capital such corporation intends and expects to invest in the state at any time during the current fiscal year. "Invested capital" is defined as the value of the maximum amount of funds, credits, securities and property of whatever kind existing at any time during the fiscal year in the State of Oklahoma and used or employed by such corporation in its business carried on in this state.
C. The Secretary of State, upon payment to the Secretary of State of the fees prescribed in Section 1142 of this title, shall issue a sufficient number of certificates under the hand and official seal of the Secretary of State, evidencing the filing of the statement required by the provisions of subsection B of this section. The certificate of the Secretary of State shall be prima facie evidence of the right of the corporation to do business in this state; provided that the Secretary of State shall not issue such certificate unless the name of the corporation is such as to distinguish it upon the records of the Office of the Secretary of State in accordance with the provisions of Section 1141 of this title.
D. A foreign corporation, upon receiving a certificate from the Secretary of State, shall enjoy the same rights and privileges as, but not greater than, a corporation organized under the laws of this state for the purposes set forth in the statement filed by the corporation with the Secretary of State pursuant to which such certificate is issued and, except as otherwise provided in the Oklahoma General Corporation Act, shall be subject to the same duties, restrictions, penalties and liabilities now or hereafter imposed upon a corporation organized under the laws of this state with like purpose and of like character.
Okla. Stat. tit. 18, § 1130 (2001).

4. An order affecting a substantial right in an action, when such order, in effect, determines the action and prevents a judgment, and an order affecting a substantial right, made in a special proceeding or upon a summary application in an action after judgment, is a final order, which may be vacated, modified or reversed, as provided in this article.

¶ 11 This Court directed Landowner to show cause why the appeal should not be dismissed for lack of an appealable order. Upon consideration of Landowner's response, this Court permits the action to proceed as review of a certified interlocutory order because the order affects a substantial part of the merits of the controversy.[7]

## STANDARD OF REVIEW

¶ 12 This appeal challenges the trial court's legal conclusion drawn from the undisputed facts presented in the summary judgment record. Where, "as in this matter, the dispute concerns the legal effect of the relevant facts, the question [before this Court] is whether the party seeking enforcement is entitled to judgment as a matter of law. Rules for Dist. Cts., Okla. Stat. tit. 12, ch. 2, app., Rule 13(e) (Supp. 2008)." *In re De–Annexation of Certain Real Property from City of Seminole*, 2009 OK 18, ¶ 7, 204 P.3d 87, 89. And because "summary judgment disposes solely of issues of law, we review it de novo" without any deference to the trial court's legal ruling. *Young v. Macy*, 2001 OK 4, ¶ 9, 21 P.3d 44, 47; *Kluver v. Weatherford Hosp. Auth.*, 1993 OK 85, ¶ 14, 859 P.2d 1081, 1084.

## ANALYSIS

¶ 13 Condemnation, otherwise known as eminent domain, is a special pro-

ceeding that empowers an entity to take private property for the public use. *State ex rel. Dept. of Transp. v. Mehta*, 2008 OK CIV APP 25, ¶ 17, 180 P.3d 1214, 1218. Its powers and procedures are derived from statutory authority. *Pub. Serv. Co. of Okla. v. B. Willis, C.P.A., Inc.*, 1997 OK 78, ¶ 16, 941 P.2d 995, 999. But superimposed on these statutory enactments are the general constitutional constraints of article 2 sections 23 and 24 of the Oklahoma Constitution that limit the basis of a taking to "public use" upon payment of "just compensation." Additionally, eminent domain proceedings may only be initiated in strict compliance with the specific constitutional mandates and legislative enactments that confer eminent domain powers to the condemning entity, *Carter v. Okla. City*, 1993 OK 134, 862 P.2d 77; Okla. Stat. tit. 52, § 3, so as to prevent an unlawful intrusion of a landowner's rights. As such, constitutional and statutory provisions governing eminent domain are construed in the light most favorable to the landowner. *State ex rel. Dep't. of Transp. v. Cole*, 2009 OK 40, ¶ 9, 236 P.3d 49, 51.

¶ 14 The procedural vehicle that would enable a foreign corporation to exercise eminent domain rights, in this case, is delineated in title 52, which confers the benefits of "this article upon compliance with the

Okla. Stat. tit. 12, § 953 (2001).

5. A. When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the preparation and filing of a final judgment, decree, or final order as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the filing of a final judgment, decree, or final order. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the final judgment, decree, or final order adjudicating all the claims and the rights and liabilities of all the parties is filed with the court clerk. Okla. Stat. tit. 12, § 994 (2001).

6. While this appeal was pending before this Court, Landowner filed its timely exceptions to the Commissioners' report and written demand for jury trial on August 15, 2003. Those issues are still pending before the district court.

7. Although the August 7, 2003, order was incorrectly certified as immediately appealable under sections 994(A) and 953, we agree with Landowner that the more appropriate avenue for review of this matter is found in section 952, of the Oklahoma Statutes, title 12. As such, this Court recasts this proceeding from a petition in error in an appeal to a petition for certiorari to review an interlocutory order-namely because the order affects a substantial part of the merits of this controversy and "an immediate appeal may materially advance the ultimate termination of the litigation...." Okla. Stat. tit. 12, § 952(b)(3) (2001).

laws and Constitution of this state, including the provisions of Section 31, of Article 9, of the Constitution, but until such compliance they shall have no rights in, on or under the highways." Okla. Stat. tit. 52 § 53 (2001). These limitations are anchored in the Oklahoma Constitution, article 9, section 31, which provides:

> No railroad, oil pipe line, telephone, telegraph, express, or car corporation organized under the laws of any other state, or of the United States, and doing business or proposing to do business in the State of Oklahoma, shall be allowed to exercise the right of eminent domain, unless it shall become a body corporate pursuant to the laws of this state; or unless such corporation shall comply with such limitations and restrictions as may be prescribed by the Corporation Commission, and file with the commission its written acceptance of such requirements and procure from the commission a certificate entitling it to exercise such right.

Those limitations include the requirement that a foreign corporation execute a statement setting forth "the business it proposes to do in this state and a statement that it is authorized to do *that* business in the jurisdic-

tion of its incorporation." Okla. Stat. tit. 18, § 1130 B(2)e (2001) (emphasis added); see also Okla. Stat. tit. 18, § 1131 (2001). The legal effect of the express declaration is the empowerment of a corporation to acquire lands consistent with its business purpose. *See Tx. Co. v. Coryell,* 1947 OK 53, ¶ 37, 180 P.2d 631, 638. Where as here, a foreign corporation invokes the power of eminent domain to acquire easements and rights of way in Oklahoma, that corporation must demonstrate the existence of some right, power, or privilege in its state of incorporation. *See Myatt v. Ponca City Land & Imp. Co.,* 1903 OK 15, 78 P. 185, (syl. no. 1 by the court).

■ ¶ 15 The record is clear that D–Mil is a Texas corporation, authorized to do business in the State of Texas, and properly domesticated in the State of Oklahoma. However, the crux of Landowner's appeal is that the power of eminent domain, as it relates to pipeline entities, is acquired only after satisfying the applicable statutory requirements found in title 52, §§ 1–707 (2001).

¶ 16 To the contrary, D–Mil cites *Williams v. Cont'l Constr., Corp.,* 1934 OK 387, 34 P.2d 254 and title 52, sections 2 [8], 3 [9], 7 [10], and 26 [11], of the Oklahoma Statutes, contending that,

---

**8.** Foreign corporations formed for the purpose of, or engaged in the business of transporting or transmitting natural gas by means of pipelines, shall be licensed and permitted to conduct such business within this state by complying with the general corporation laws of the State of Oklahoma, and with the provisions of this article. Okla. Stat. tit. 52, § 2 (2001).

**9.** No association, combination, copartnership or corporation shall have or exercise the right of eminent domain within this state for the purpose of constructing or maintaining a gas pipeline within this state, or shall be permitted to take private or public property for their use within this state, unless expressly granted such power in accordance with this article. Okla. Stat. tit. 52, § 3 (2001).

**10.** No person, firm or association or corporation shall ever be permitted to transmit or transport natural gas by pipelines in this state or in this state construct or operate a pipeline for the transmission of natural gas, except such persons, firms, associations, or corporations be incorporated as in this article, provided, except as provided in the preceding section.

Okla. Stat. tit. 52, § 7 (2001).

**11.** Before any corporation, joint-stock company, limited copartnership, partnership or other persons shall have, possess, enjoy or exercise the right of eminent domain, right-of-way, right to locate, maintain or operate pipelines, fixtures or equipment thereunto belonging, or used in connection therewith, as authorized by the provisions of this act, or shall have, possess, enjoy or exercise any right (the word "right" in this connection being used in its most comprehensive legal sense) conferred by this act, every such corporation, joint-stock company, limited copartnership, partnership or other person, shall file in the office of said Corporation Commission proper and explicit authorized acceptance of the provisions of this act and the Constitution of this state, in cases of pipelines a plat showing in detail the points within this state between which, and the route along which the trunk lines are proposed to be constructed, the intended size and capacity thereof, and the location and capacity of all pumping stations, gate valves, check valves and connections and appliances of all kinds used, or to be used, on said trunk or lines; and upon demand of the Corporation Commis-

under *Williams,* because it has complied with Oklahoma's general corporation laws and accepted the Oklahoma Corporation Commission's rules, regulations and applicable statutes, D–Mil is entitled to exercise eminent domain across Landowner's land to market gas from a well it operates. And, no statute requires D–Mil to be specifically designated as or become a "pipeline company." We disagree.

¶ 17 D–Mil correctly notes that a pipeline company is not expressly required to be named as such. *See e.g. Mo.–Kan.–Tex.R. Co. v. State,* 1985 OK 108, ¶ 35, 712 P.2d 40, 46; *French v. Ayres,* 1949 OK 88, 207 P.2d 308 (recognizing a pipeline company as a "public service corporation" even though it was not expressly named as such). Under title 52, a company's business name is not required to be consistent with its business purpose. *See* Okla. Stat. tit. 52, §§ 1–707 (2001). Instead, this Court will scrutinize a business's function to determine whether that entity possess the rights and privileges conferred by article 9, section 31 of the Oklahoma Constitution and title 52 of the Oklahoma Statutes. *See Mo.–Kan.–Tex.R. Co.,* 1985 OK 108, 712 P.2d 40, *French,* 1949 OK 88, 207 P.2d 308. But, mere compliance with Oklahoma's general corporate laws and recognition as a body corporate, does not in itself, automatically empower D–Mil with the right of eminent domain.

¶ 18 D–Mil's supposition of the *Williams* court's statement, although dicta taken out of context, seemingly implies that the court opined the Legislature unequivocally delegated condemnation authority to *all* domesticated foreign entities. 1934 OK 387, 34 P.2d 254. But that interpretation is supported neither by precedent nor logic. *Williams,* did not involve a domesticated foreign corporation engaging in business activities of an unknown or unsubstantiated origin exercising the power of eminent domain in Oklahoma. Rather, the case was one of first impression and addressed the circumstances in which the power of eminent domain is extended to a foreign pipeline corporation. *Id.,* ¶ 4, 34 P.2d at 255.

¶ 19 The *Williams'* court explained that under the Oklahoma Constitution, article 9, section 31, foreign "railroads, oil pipelines, telephones, telegraphs, express or car corporations incorporated in a foreign state" may exercise the right of eminent domain upon becoming a statutorily recognized body corporate in this state. *Id.,* ¶ 7, 34 P.2d at 255. However, the Legislature had not enacted a specific provision enabling foreign pipelines to reincorporate in Oklahoma. *Id.,* ¶ 8, 34 P.2d at 255. What existed, was ample statutory authority governing the licensing of foreign corporations to conduct business in this state, and statutory authority empowering Oklahoma pipelines with condemnation rights. *Id.* In construing article 9, section 31 of the Oklahoma Constitution and Oklahoma's existing corporate laws, the *Williams'* court yielded to Oklahoma's long-standing policy of recognizing foreign corporations, *already engaged* in section 31 activities, as corporate bodies empowered with the right of eminent domain upon domestication. *Id.,* ¶ 15, 34 P.2d at 257. (emphasis added). It reasoned,

[i]t is true that the Legislature, by its enactment fixing the domicile of persons, firms, and corporations transacting business within the state, as found in sections 119 to 124, O.S.1931, and in its enactment of laws pertaining to the licensing of foreign corporations to do business within the state, do not within themselves grant to such corporations the right of eminent domain as provided by section 124, O.S.1931, which has been called to our attention ... but all such enactments indicate a policy of permitting foreign corporations to enjoy the same privileges enjoyed by like domestic corporations without discrimination.

sion the proper party or parties, as required by said commission, shall properly file a plat showing in detail all the lines owned and operated by them respectively, with full and explicit information as to their capacity, size and location, and the capacity of their pumping stations, gate valves, check valves and connections of all kinds, respectively, required or used in the operation thereof.
Okla. Stat. tit. 52, § 26 (2001).

*Id.,* ¶ 8, 34 P.2d at 255. "Such provision of the Constitution unquestionably contemplates that a foreign corporation .... as is described [in article 9, section 31 of the Oklahoma Constitution] may, by complying with the requirements of the statutory and constitutional law of the state, acquire the right of eminent domain." *Id.,* ¶ 7, 34 P.2d at 255. Because the *Williams'* litigants conceded the foreign corporation's status as a pipeline company in its home state, the only issue before the court was whether that corporation, having domesticated in Oklahoma, acquired the right to exercise eminent domain. *Id.,* ¶ 7, 34 P.2d at 255. The *Williams'*court answered in the affirmative.

¶ 20 D–Mil's evidentiary materials presented in its motion for summary judgment do not support, in any manner whatsoever, its entitlement to exercise eminent domain beyond its unsubstantiated assertion that it is a statutorily recognized "pipeline company" because it is a Texas corporation domesticated in Oklahoma. D–Mil's motion provides no explanation of any of its business activities in Texas beyond mineral leasing. Whether D–Mil transports or transmits natural gas by means of a pipeline, at best, is purely conjecture. D–Mil, therefore, is not entitled to summary judgment as a matter of law.

 ¶ 21 During the course of a summary judgment action, a trial judge must decide all legal issues pending and shall render judgment in favor of the party entitled to judgment as a matter of law, regardless of whether that party is the movant. *See e.g., Travelers Ins. Co. v. L.V. French Truck Serv., Inc.,* 1988 OK 76, ¶ 13, 770 P.2d 551, 557; Rules for Dist. Cts., Okla. Stat. tit. 12, ch. 2, app., Rule 13(e) (Supp. 2008) ("If it appears to the court that ... one of the parties is entitled to judgment as a matter of law, the court shall render judgment for said party"). The trial judge was presented with the legal controversy; it was briefed by the parties; and the court was under a duty to address the legal issues. D–Mil specifically denied the existence of any material fact and sought judgment as a matter of law. This Court holds that while no issues of material facts exist, it is Landowner, not D–Mil, who is entitled to judgment as a matter of law.

¶ 22 The factual evidence presented does not indicate that D–Mil engages, either in Texas or elsewhere, in transporting or transmitting natural gas by means of pipeline for hire or otherwise. Section 2 requires all foreign corporations to comply with the Oklahoma general corporate laws. Okla. Stat. tit. 52. Among the corporate laws is the requirement that D–Mil state its true business activities in Texas. *See* Okla. Stat. tit. 18, § 1130 (2001). No showing has been made sufficient to sustain D–Mil's burden of establishing a prima facie case that it is a "pipeline company" vested with the constitutional and statutory right of eminent domain. What the summary judgment record does support is judgment in favor of Landowner, and the evidentiary record was insufficient for the district court to conclude otherwise.

## CONCLUSION

¶ 23 In considering all the pleadings and evidentiary materials submitted by the parties, we find that D–Mil is properly domesticated in Oklahoma as a "mineral leasing company." As a matter of law, however, D–Mil has not met the statutory definition of a "pipeline company" under Oklahoma law. Specifically, D–Mil failed to demonstrate that it transports or transmits natural gas by means of pipeline as part of its lawful business activities in the State of Texas. There was no factual evidence to support the trial court's legal conclusion that D–Mil is a pipeline company. Therefore, the district court's August 7, 2003 order, is reversed and the trial court is directed, on remand, to enter summary judgment in favor of Landowner.

CERTIORARI TO REVIEW CERTIFIED INTERLOCUTORY ORDER GRANTED; DISTRICT COURT'S CERTIFIED INTERLOCUTORY ORDER REVERSED; CAUSE REMANDED WITH INSTRUCTIONS.

CONCUR: TAYLOR, C.J.; COLBERT, V.C.J.; KAUGER, WATT, EDMONDSON, REIF, COMBS, GURICH, JJ.

NOT VOTING: WINCHESTER, J.